235 N.J. Super. 471 (1989)
563 A.2d 83
ALSAR TECHNOLOGY, INC. AND DAVID AGENS AND MILDRED AGENS, PLAINTIFFS,
v.
THE ZONING BOARD OF ADJUSTMENT OF THE TOWN OF NUTLEY, THE MAYOR AND TOWN COUNCIL OF THE TOWN OF NUTLEY, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided May 9, 1989.
As Amended June 2, 1989.
*474 Brian D. Schwartz for plaintiffs (Craner, Nelson, Satkin & Scheer, attorneys).
Michael J. Viola for defendant, The Zoning Board of Adjustment of the Town of Nutley.
John P. Ryder for defendants, The Mayor and Town Council of the Town of Nutley.
VILLANUEVA, J.S.C.
The installer of a satellite television dish and homeowners bring this action challenging a local zoning ordinance which limits the size and location of satellite dish antennas which could be installed. They also challenge the denial of a variance to permit such use.
*475 The issues are: (1) whether the ordinance is preempted by federal law; and (2) whether plaintiffs are entitled to the award of attorneys fees pursuant to 42 U.S.C.A. § 1988.
The court holds that the ordinance is preempted by a FCC regulation since it poses an unreasonable burden on reception and is discriminatory. Although the award of attorneys fees to the prevailing party is discretionary, it was clearly the intent of Congress in passing § 1988 that fees should be awarded as a matter of course in all but exceptional cases.

STATEMENT OF FACTS
In February, 1988, Alsar Technology, Inc. applied for a building permit to install a satellite dish (receive only) on the roof of the home of David and Mildred Agens, 25 Craig Place, Nutley. The Code Enforcement Officer denied the application based upon the Code of Nutley, Chapter 240, Article VII Section 240-31.1, which reads as follows:
A. Satellite dishes, as defined in § 240-3, are only permitted as a conditional use as an accessory structure to a principal use and only if all of the following are complied with:
(1) There shall be one (1) per lot or one (1) per principal structure, whichever is less.
(2) The use of the dish shall be solely for the use of such lot or structure.
(3) There shall be a maximum height of seven (7) feet, measured at the highest point of its outer circumference or any extension, including the supporting structure, to grade.
(4) The location shall be:
(a) At least ten (10) feet away from the principal structure.
(b) In the rear yard only, at least eight (8) feet away from adjoining property lines and at least fifty (50) feet away from any front or side street line.
(5) The dish shall be screened from view from adjoining properties and street by evergreen planting which shall be at least seven (7) feet in height at time of planting and which height shall be maintained. Such evergreen planting shall be at least four (4) feet from the outer circumference of the dish, or as otherwise determined by the Planning Board.
(6) All wiring to or from the dish shall be placed underground.
(7) No dish shall be permitted to have any lettering thereon or to be used as an advertising or identification sign.

*476 (8) The color of the dish shall blend with the surroundings and have an open mesh surface.
B. A transmitting dish is not a permitted use except for amateur radio operators licensed by the federal Communications Commission at the licensee's authorized station location. The Planning Board is hereby authorized to grant a conditional use permit for such antennas subject to reasonable requirements, consistent with orders and opinions of the Federal Communications Commission concerning public safety, health and aesthetics.
The Agenses could not comply with these zoning requirements since their backyard is only two feet deep, the sideyards are slightly greater than 10 feet wide, and the front yard setback from street to the front of the house is less than 25 feet. Therefore, the only possible place where they could install a satellite dish is on the roof.
Alsar appealed the construction official's denial to the Nutley Zoning Board of Adjustment seeking a variance pursuant to N.J.S.A. 40:55D-70d. Prior to the hearing on Alsar's application, Alsar, through its attorney, notified the Board, in writing, of § 1 et seq. of the Federal Communications Act, 47 U.S.C.A. § 151 et seq., by which the Federal Communications Commission was created and the regulation it promulgated that preempts state and local zoning of satellite receive-only antennas with two exceptions not applicable herein. 47 C.F.R. § 25.104.
On May 16, 1988, a hearing was held before the Nutley Board of Adjustment on Alsar's application. At that time, Alsar submitted the testimony of the following persons:
1. David Agens, the occupant of the property, regarding the reason why he wanted to install a satellite dish antenna and the reasons why the dish could not be installed anywhere but on the roof.
2. Alvaro Vallecilla, president of Alsar Technology, regarding the physical characteristics of the satellite dish antenna, the strength and safety of the roof-mounted antenna and the manner in which the antenna worked.
3. Emil Hergert, a real estate expert, who testified that in his experience the roof-mounted satellite dish antenna would not detract from the aesthetic value of the property nor the market value of that property or any properties in the neighborhood.
Neighbors who believed that the dish would be unsafe and unattractive opposed the application.
*477 At the completion of the hearing, the Board of Adjustment voted unanimously to deny the variance application. A resolution memorializing this decision, adopted on June 20, 1988, stated, inter alia: (1) the size of the proposed dish by applicant exceeds that permitted by ordinance; (2) the applicant violated the location of the dish with respect to adjacent property lines; and (3) the satellite dish would be located on the roof, which is prohibited. The Board also found that the applicant failed to establish special reasons for the granting of the variance and that § 240-31.1 of the Code of Nutley provides that satellite dishes are permitted only as a conditional use as an accessory structure to a principal use and only if the conditions as enumerated are complied with.
Plaintiffs filed this complaint arguing: first, that the decision of the Board of Adjustment was arbitrary and capricious in view of the FCC's preemption of state and local regulation of satellite dish antennas and considering the overwhelming evidence submitted in support of Alsar's application and the lack of any substantive testimony in opposition to it.
Secondly, plaintiffs assert that Nutley's ordinance regulating dish antennas and prohibiting all roof-mounted dish antennas is illegal and unconstitutional under the preemptive regulations of the Federal Communications Commission, particularly since the ordinance on its face not only fails to have a reasonable and clearly defined health, safety or aesthetic objective, but in fact prevents the reception of satellite-delivered signals on properties such as the Agenses.
Finally, plaintiffs seek attorneys fees and costs of suit pursuant to 42 U.S.C.A. § 1988, since the Nutley ordinance has been preempted by FCC regulation and enforcement of the ordinance allegedly violates plaintiffs' First Amendment rights to receive satellite television signals.

PREEMPTION
The only New Jersey state court decision regarding federal preemption of local zoning laws involved a remand by the *478 Appellate Division to afford the trial court an opportunity to consider the impact of adoption of the federal regulation upon that controversy. L.I.M.A. Partners v. Borough of Northvale, 219 N.J. Super. 512 (App.Div. 1987).
Federal preemption of state or local law is a well-established constitutional doctrine based upon the Constitution's supremacy clause. U.S. Const. Art. VI, cl. 2. See generally J. Nowak, R. Rotunda & J. Young, Constitutional Law, 292-96 (2d ed. 1983).
The fact that federal preemption is being asserted by the FCC via its rulemaking powers does not diminish the weight to be accorded the preemption:
Federal regulations have no less pre-emptive effect than federal statutes. Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily. When the administrator promulgates regulations intended to pre-empt state law, the court's inquiry is similarly limited: If [h]is choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.
Fidelity Federal Savings and Loan Ass'n v. De La Cuesta, 458 U.S. 141, 153-54, 102 S.Ct. 3014, 3022-23, 73 L.Ed.2d 664 (1982) [(quoting United States v. Shimer, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)].
The Federal Communications Commission adopted a regulation dealing specifically with federal preemption of local zoning entitled "Preemption of local zoning of earth stations":
State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations:
(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and
(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment. *479 Regulation of satellite transmitting antennas is preempted in the same manner except that state and local health and safety regulation is not preempted. [47 C.F.R. § 25.104].
This regulation does not preempt all local zoning regulation of satellite dish antennas. Rather, preemption occurs only where the local regulation "`differentiates' between satellite dish antennas and `other types of antenna facilities.'" L.I.M.A. Partners v. Borough of Northvale, supra, 219 N.J. Super. at 521.
In 1983, Congress passed the Cable Communications Policy Act of 1984 (the "Act") amending the Communications Act of 1934. The main thrust of the legislation was to assure that the exploding market for cable television technology provide the widest possible diversity of information services to the public. See House Committee on Energy and Commerce, Cable Communications Policy Act of 1984, H.R.Rep. No. 89-934, 98th Cong., 2d Sess. 19, reprinted in part in 1984 U.S.Code Cong. & Admin.News 4655, 4656.
Relying in part on the Act's satellite television provisions, see 51 Fed.Reg. 5519, 5522 (1986), the FCC issued the regulation in question.
Nutley recognizes that Congress intended to permit access to satellite transmissions via satellite dish antennas. Congress stated in 47 U.S.C.A. § 605(f) that any rights, obligations, or liability or any applicable, federal, state or local law, shall not be affected by this section; therefore, Nutley urges that the FCC's attempt to preempt is ambiguous. Nutley argues that, at best, the deference which might otherwise be given to administrative interpretations of statutes, see Chevron, U.S.A., Inc. v. Natural Resources Defense, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), should not apply in this case because: (a) local authorities, who are better suited to respond to local zoning needs, have taken a position on this question; (b) First Amendment rights are not violated; and (c) the FCC has no authority to adopt the regulation in question.
*480 Statutorily-authorized regulations of a federal agency, such as the Federal Communications Commission, preempt any state or local law that conflicts with the regulations or frustrates the purposes thereof. U.S. Const. Art. VI, cl. 2. City of New York v. F.C.C., 486 U.S. 57, 108 S.Ct. 1637, 1641-44, 100 L.Ed.2d 48 (1988).
The preemption issue presented here is unusual because the federal regulation establishes standards that govern whether and to what degree the local regulation is preempted.
The intent of the Federal Communications Commission is clearly to preempt local regulation of satellite dish antenna installations which are inconsistent with its regulations. Van Meter v. Township of Maplewood, 696 F. Supp. 1024, 1029 (D.N.J. 1988), applying the preemption test set forth in City of New York v. F.C.C., supra, 108 S.Ct. at 1641-44.
The threshold requirement for determining FCC preemption of local regulation of satellite dish antennas under 47 C.F.R. § 25.104 is a finding that the zoning regulation fails to differentiate between satellite receive-only antennas and other types of antenna facilities. Since the Nutley ordinance does not regulate other types of antennas in any manner whatsoever, while regulating and severely limiting satellite dish antennas, this threshold test is met.
The Nutley ordinance limiting installation of dish antennas is preempted unless its requirements have a reasonable and clearly defined health, safety or aesthetic objective. § 240-31.1 of the Nutley ordinance fails to state any such reasonable and clearly defined objective, and is therefore invalid for that reason alone. For example, there is no health, safety, or aesthetic objective for limiting maximum height of antenna dish to 7 feet, as opposed to 8 or 10 feet as Alsar intends to install on the Agens' property.
Because satellite-transmitted television signals are relatively weak, dish antennas must be at least ten feet in diameter in this area in order to receive transmissions. If a smaller antenna is *481 utilized, the picture quality is degraded; this reason prompted the Agenses to acquire a satellite antenna.
The ordinance is an attempt to diminish the visual impact of the antennas by requiring that they be installed in the rear yard and where they cannot be viewed from the street or adjoining properties and by requiring that the installation be screened with tall shrubbery. The ordinance requires the antenna to be "screened from view from adjoining properties and street by evergreen planting which shall be at least seven feet in height at the time of planting." Ordinance sec. A(5). This requirement is unreasonable because it fails to recognize the impact of shielding on an antenna's reception window. While vegetation surrounding a satellite installation can actually help to improve reception by absorbing interfering signals, it can impair or limit reception if it obstructs the antenna's line of sight. If the orientation of a specific lot requires a look angle directed toward a rear-adjoining lot, for example, the antenna would have to be placed over ten feet behind the required seven-foot high evergreen screening, assuming a fourteen degree elevation azimuth, in order to gain a clear "view" over the obstacle. Given the configuration of some lots, this might well limit or completely prevent reception. This type of regulation was specifically disapproved by the FCC in the statements accompanying its regulation. 51 Fed.Reg. 5519, 5524 (1986) ("[An ordinance] cannot unreasonably limit or prevent reception by requiring, for example, that a receive-only antenna be screened so that line of sight is obscured" because "[a] receive-only antenna must have an unobstructed line of sight to a satellite in order to receive signals.") 5 P. Rohan, Zoning and Land Use Controls § 35.02(2) (1983). Thus, in the FCC's view, a regulation requiring screening is unreasonable, irrespective of any presumption of validity.
In addition, if there were lots on both sides of the house, the satellite dish user would have to shield the antenna from view by the adjoining properties by planting evergreen shielding on both sides and the rear. Thus, a homeowner might have to *482 plant evergreens seven-feet tall around the sides of his property to the rear of the house as well as along his rear boundary[1] to comply with this section at a cost that could easily exceed the purchase and installation costs of the satellite dish equipment.
The ordinance also unreasonably restricts reception by failing to provide options for alternative placement to satellite dish users who cannot receive signals or who would receive only diminished reception through rear lot installation. While roof-mounting may pose aesthetic and safety problems, a per se prohibition of roof installation, especially where the community interests in appearance and safety can be satisfied, at least in part, is an unreasonable limitation on reception within the meaning of the regulation.
Some safety purposes arguably might also be achieved by preventing placement of the dish antenna on the roof and by establishing height limitations in order to avoid the hazards of a fallen or windblown antenna.[2]
Likewise, there is no "clearly defined health, safety or aesthetic objective" in allowing dish antennas to be installed only in rear yards when there is no similar requirement for a detached accessory building other than a dish antenna, and the rear yard installation would be as potentially displeasing to adjacent neighbors as rooftop installation as Alsar proposes.
Since the FCC regulation requires a "clearly defined health, safety or aesthetic objective", and there is no such clearly defined objective, the Nutley dish antenna ordinance is invalid under part (a) of the FCC regulation.
The Nutley ordinance also violates part (b) of the FCC regulation because it totally prevents reception of satellite-delivered *483 signals on lots such as the Agenses' due to the lack of space in the rear yard.
The ordinance functions as an unreasonable burden on reception because its provisions make reception technically impossible and because it fails to recognize the unique conditions that govern signal reception on any given site.
In a similar case involving an application for a building permit for the installation of a "receive only" satellite dish antenna on the roof of the applicant's premises, the court ruled that the Federal Communications Commission rule regarding regulation of satellite receiving antennas preempted the local zoning ordinance or interpretation thereof which effectively banned or unreasonably restricted installation of satellite dish antennas in certain use districts. Minars v. Rose, 123 A.D.2d 766, 507 N.Y.S.2d 241 (A.D. 2 Dept. 1986).
Nutley's contention that relief from the rear yard and height limitation requirements should be given by the Board of Adjustment through variance applications is meaningless as is evident from the denial herein. Judge Dickinson Debevoise found this solution unsatisfactory in Van Meter, supra, because it does not specifically consider the peculiar characteristics of satellite television signal reception as a factor in the variance evaluation process. Such a process also would create the additional likelihood of judicial intervention (as herein) which, along with the application and notice requirements put upon the applicant, would create financial burdens upon the dish antenna user which are not required for other antenna users and is therefore discriminatory. The variance process would impose an unreasonable limitation on reception of satellite signals, Id. 696 F. Supp. at 1032, and prohibit such reception in a case such as this one.

FIRST AMENDMENT CONSIDERATIONS
Plaintiffs claim that they have a First Amendment right to use a dish antenna without interference from the Town of Nutley.
*484 Presumably, the content of satellite-delivered telecommunications includes not only entertainment programming, but also valuable commercial, political, and social information. Any state or local regulation that may potentially restrict the access or use of a mode of communication which conveys or receives such information raises the issue of the constitutionality of such regulation in light of the Constitution's First Amendment guarantee of protection of free speech. Therefore, state or local regulation of satellite earth stations based upon aesthetics or other criteria does, at least initially, raise First Amendment concerns. Nevertheless, as the Supreme Court observed in Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). "It has been clear since this Court's earliest decisions concerning the freedom of speech that the state may sometimes curtail speech when necessary to advance a significant and legitimate state interest." Id. 466 U.S. at 804, 104 S.Ct. at 2128 (citing Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919)). Furthermore, "[i]t is well settled that the state may legitimately exercise its police power to advance [a]esthetic values." Id. 466 U.S. at 805, 104 S.Ct. at 2129.
The United States Supreme Court has long recognized that the citizens of this country have a constitutional First Amendment right to receive access to broadcast communications. As the Supreme Court stated in Red Lion Broadcasting Company v. FCC, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969):
It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail ... It is the right of the public to receive suitable access to social, political, esthetic, moral and other ideas and experiences which is crucial here. That right may not constitutionally be abridged ... 395 U.S. at 390, 89 S.Ct. at 1806.
Justice Blackmun stated in his concurring opinion in Schad v. Mt. Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981),
First, I would emphasize that the presumption of validity that traditionally attends a local government's exercise of its zoning powers carries little, if any, *485 weight where the zoning regulation trenches on rights of expression protected under the First Amendment. 452 U.S. at 77, 101 S.Ct. at 2187.
It has long been established, however, that "[t]he power of local governments to zone and control land use is ... broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life ..." Id. 452 U.S. at 68, 101 S.Ct. at 2182.
In light of the preemption, the court need not address this issue.

AUTHORITY OF FCC TO PROMULGATE THE REGULATION
Defendants contend that the FCC lacked authority to promulgate the regulation, relying upon the fact that one commentator questioned the authority stating:
It is beyond doubt that Congress has the inherent power to preempt all state and local zoning regulations pertaining to satellite earth stations. However, Congress has not yet chosen to explicitly do so via further amendment to the Communications Act. Although federal preemption may be warranted despite a lack of explicit federal statutory language, this article's analysis of the FCC's stated statutory and case law authority for federal preemption illustrates that in the instant case such authority is inadequate to overcome the countervailing forces of traditional state and local zoning powers as derived from the police powers.
Louis S. Sorell, Federal Preemption of State and Local Zoning Regulation of Satellite Earth Stations, 9 Com. & L. 31, 48 (Aug. 1987).
This court lacks jurisdiction to consider defendants' attempt to circumvent compliance with the FCC Order by challenging its authority. Even were this court able to address the merits of that issue, the FCC regulation would be sustained based upon the broad mandate of 47 U.S.C.A. § 151 of the Communications Act which empowers the FCC to make communications media available to all persons, as well as the 1984 amendments to 47 U.S.C.A. § 605, which prohibits limitation of reception of unscrambled and unmarketed satellite signals. In the Matter of Pre-emption of Local Zoning or the Regulation of Receive-Only Satellite Earth Stations, 59 R.R.2nd (1986).
*486 Any order, decision, report or action made or taken by the Federal Communications Commission may be challenged by any party or person adversely affected by such order, etc., only by petition for reconsideration to the FCC. The petition must be filed with the FCC within 30 days from the date upon which public notice is given of the order, etc. The petition for reconsideration to the FCC is a condition precedent to judicial review of the FCC action being challenged where the party seeking review was not a party to the proceedings which resulted in the action. 47 U.S.C.A. § 405.
Before an FCC rule is submitted to judicial review, the FCC must be given the opportunity to reconsider its position. 47 U.S.C.A. § 405; City of Peoria v. General Elec. Cablevision Corp., 690 F.2d 116, 121 (7th Cir.1982). Although 47 U.S.C.A. § 405 specifies that a petition for reconsideration must be filed within thirty days of the Commission's decision, this provision has been interpreted merely to provide the Commission with a "fair opportunity" to consider the issues. Meredith Corp. v. F.C.C., 809 F.2d 863 (D.C. Cir.1987); Peoria, supra, 690 F.2d at 119. Thus a defendant may raise his arguments before the Commission in a motion for a declaratory judgment, 47 C.F.R. § 1.2, or in a petition for repeal of the regulation. 47 C.F.R. § 1.401.
Appeals from decisions or other action by the Federal Communications Commission, after administrative remedies are exhausted, can be only to the United States Court of Appeals. 47 U.S.C.A. §§ 402 & 405(a); 28 U.S.C.A. § 2342(1). Therefore, this court lacks jurisdiction to consider or decide a challenge to the validity of the FCC preemptive regulation or the authority of the FCC to enact the regulation.

ATTORNEYS FEES
Plaintiffs allege that, since their rights under the First and Fourteenth Amendments of the United States Constitution have been violated, attorneys fees should be awarded to them.
*487 The court, in its discretion, may allow the prevailing party in a civil rights action a reasonable attorney's fee as part of the costs. 42 U.S.C.A. § 1988.
The actions of Nutley have been as stubborn and violative of plaintiffs' rights as those in Van Meter v. Township of Maplewood, supra. Unlike the Maplewood Township's circumstances, Nutley Township continued its Dish Antennae Ordinance in effect long after the Federal Communications Commission regulation was promulgated and even after the expiration of the time period for challenging the FCC regulation. Alsar applied for a building permit to install the rooftop dish antenna in February, 1988, and appeared before the Board of Adjustment in May, 1988. Despite Nutley's awareness that its ordinance was being challenged, it has continued to this day to ignore its obligation to conform to the FCC pre-emptive regulation.
An award of attorneys fees is appropriate against a municipality where a party's federal constitutionally guaranteed rights have been violated while the municipality acts under color of state law. 42 U.S.C.A. § 1983, Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611, 638 (1978), Young v. American Mini Theatres, 427 U.S. 50, 55, 96 S.Ct. 2440, 2445, 49 L.Ed.2d 310 (1976), reh'g. den. 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976).
Municipal officials should not be held liable for damages for deprivation of civil rights merely because a reviewing court finds their action in rejecting application for development under Municipal Land Use Law was arbitrary and capricious. N.J.S.A. 40:55D-1 et seq., 42 U.S.C.A. § 1983. Anastasio v. Planning Bd. of Tp. of West Orange, 209 N.J. Super. 499 (App. Div. 1986), certif. den. 107 N.J. 46 (1986).
... New Jersey law granted the victim of such a mistaken action a complete remedy, so there was no deprivation of any interest, only a delay. See Williamson Co. Regional Planning v. Hamilton Bank, 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126, 144 (1985); Parratt v. Taylor, 451 U.S. 527, 543, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420, 434 (1981). If we held that public *488 officials are liable under 42 U.S.C.A. § 1983 merely for erroneously exercising power under state law remediable under state law, public officials in this state on all levels would face numerous possible claims and indeed would serve in office at great financial peril. * * * [T]he (U.S.) Supreme Court has held that municipal entities possess no immunities under 42 U.S.C.A. § 1983. See Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). * * * We do not believe that Congress intended such broad liabilities for ordinary governmental decisions. Id. 209 N.J. Super. at 522-523.
However, the Anastasio decision did not deal with attorneys fees awarded by the court (and previously settled) but, rather, dealt only with punitive damages.
Good faith of a defendant, standing alone, does not justify a denial of attorneys fees under this section. Lackey v. Bowling, 476 F. Supp. 1111 (D.Ill. 1979). Gregg v. Township Committee of the Township of Hazlet, 232 N.J. Super. 34, 38 (App.Div. 1989). Hutto v. Finney, 437 U.S. 678, 693-700, 98 S.Ct. 2565, 2574-79, 57 L.Ed.2d 522 (1978), reh'g den. 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979). Schwartz and Kirklin, Section 1983 Litigation: Claims, Defenses and Fees, § 16.12 (1986), [hereinafter Schwartz and Kirklin].
Likewise, an award of attorneys fees pursuant to this section does not have to be predicated on any finding of bad faith. Population Services Intern. v. Carey, 476 F. Supp. 4 (D.C.N.Y. 1979).
Although the award of fees is discretionary, it was clearly the intent of Congress in passing § 1988 that fees be awarded as a matter of course. Gregg v. Township Committee of the Township of Hazlet, supra, 232 N.J. Super. at 37 Zarcone v. Perry, 581 F.2d 1039, 1041-1042 (2d Cir.1978), cert. den. 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). Awarding of fees should be the rule rather than the exception, and the special circumstances exception should be applied only in unusual cases. Ackerley Communications, Inc. v. City of Salem, Or., 752 F.2d 1394, 1396 (9th Cir.1985), cert. den. 472 U.S. 1028, 105 S.Ct. 3503, 87 L.Ed.2d 634 (1985). Fees may be denied only where special circumstances would make such an *489 award unjust. Carlstadt Educ. Ass'n v. Mayor & Council of Carlstadt, 219 N.J. Super. 164, 167 (App.Div. 1987). Frank's Chicken House v. Mayor and Council of Borough of Manville, 208 N.J. Super. 542, 545 (App.Div. 1986). It was the intent of Congress in enacting § 1988 to require an award of fees in all but exceptional cases in order to encourage litigants to vindicate civil rights violations. See Teitelbaum v. Sorenson, 648 F.2d 1248, 1251 (9th Cir.1981); Schwartz and Kirklin, supra, at § 16.12.
Thus, a trial judge's discretion in denying fees is quite limited. Schwartz and Kirklin, supra, at §§ 16.1-16.2.
The reasons asserted by the Town why attorneys fees should not be awarded are: (1) mere allegation of violations of the First Amendment is not sufficient to justify an award of attorneys fees; and (2) plaintiff's claim is regulatory in nature  it is not cognizable under 42 U.S.C.A. § 1983 and does not justify award of attorneys fees pursuant to 42 U.S.C.A. § 1988.
What the Town fails to realize is that its action was discriminatory under the Fourteenth Amendment; the court did not have to reach the question whether there was a First Amendment violation too.
The Town contends that the plaintiffs' claim is outside the scope of § 1983 because "[t]he FCC does not make laws, and, accordingly, is not capable of creating any civil rights." Its belief that the FCC's power to preempt local zoning is based upon the Commerce Clause of the United States Constitution, which does not provide for civil rights, [relying upon Consol. Freightways Corp. of Del. v. Kassel, 730 F.2d 1139, 1145 (8th Cir.), cert. den., 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984); Gavit, Commerce Clause, 32-33 (1932)], is erroneous. Plaintiffs' claims are predicated upon a Fourteenth Amendment violation entitling plaintiffs to an award of attorneys fees. Van Meter v. Township of Maplewood, supra, 696 F. Supp. at 1032.
*490 Neither of these reasons justifies the denial of an award of attorneys fees.
The town attorney's assertion that he has been attempting to prepare a new ordinance that would survive challenge but was unable to do so within time constraints imposed is also not a ground to deny attorneys fees. Because a § 1983 violation was not alleged until an amendment to the complaint was permitted on January 20, 1989 when David and Mildred Agens became party plaintiffs, the Town contends it was only a short time before the trial so attorneys fees should not be awarded.
Since Nutley, for two years, did not challenge the FCC regulation through the proper administrative process which has been available to it or amend its ordinance, an award of attorneys fees is warranted. Nutley has failed to show any exceptional circumstances to justify their denial.

CONCLUSION
Therefore, § 240-31.1 of the Nutley ordinance is invalidated and enforcement of it prohibited. Plaintiffs can apply for and obtain a building permit for the installation of their roof-mounted satellite dish antenna and can file an affidavit of services on notice to defendants for an award of attorneys fees.
NOTES
[1] Even on a 50 x 100 foot lot this would require 150 feet of evergreen planting (50 feet along each adjoining property and 50 feet along the rear).
[2] This argument was dispelled by expert testimony before the Board.