243 N.J. Super. 18 (1990)
578 A.2d 389
NATIONWIDE SATELLITE COMPANY AND GEORGE SCHEURICH, PLAINTIFFS-RESPONDENTS,
v.
ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF HADDON HEIGHTS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 7, 1990.
Decided July 17, 1990.
*20 Before Judges KING, BAIME and KEEFE.
Ryan and Thorndike, attorneys for appellant (Donald S. Ryan, on the brief).
Michael J. Veneziani, attorney for respondents.
The opinion of the court was delivered by KING, P.J.A.D.
This case requires resolution of the conflict between a local zoning ordinance and a regulation of the Federal Communications Commission applicable to a satellite dish antenna. The Chancery Division judge concluded that in the particular circumstances, *21 the federal regulatory power preempted the local ordinance. We agree with the trial judge's factual findings and legal conclusions and affirm. We find that local aesthetic considerations, no matter how legitimate, must yield in this case to federal regulatory power.
Plaintiffs, a property owner (Scheurich), and a distributor and installer of satellite dish antennas, Nationwide Satellite Inc. (Nationwide), applied to the Haddon Heights Zoning Board of Adjustment (Board) for a bulk variance to place a satellite dish antenna on the roof of the property owner's home. Their application was denied by the Board. Plaintiffs then brought an action in lieu of prerogative writs challenging the Board's decision. The trial judge eventually decided that pursuant to a rule of the Federal Communications Commission, 47 C.F.R. § 25.104, the Haddon Heights satellite dish antenna ordinance, No. 724, imposed unreasonable limitations upon reception of satellite-delivered signals and was federally preempted. On this appeal, the Board asserts that the municipal ordinance complies with the federal rule and that the trial judge erred when he found the ordinance invalid due to federal preemption.
These are the facts in detail. In 1986, plaintiff Nationwide, a distributor and installer of satellite dish antennas, installed a satellite dish antenna on the front roof of the home owned by plaintiff, George Scheurich, without first obtaining a permit as required by a borough ordinance. The satellite dish is ten feet in diameter and costs $5,500. After installation, Scheurich and Nationwide applied to the Board for variances to permit placing the satellite dish antenna on the roof of Scheurich's home. In October 1986 the Board denied plaintiffs' application. Plaintiffs filed suit.
In June 1987, Judge Lowengrub ruled that a section of the Borough's satellite dish antenna ordinance limiting the size of satellite dish antennas to seven feet violated federal regulations and was invalid. He remanded the matter to the Board. The governing body then amended the satellite dish antenna ordinance, *22 increasing the permissible satellite dish size to ten feet in diameter.
In November 1987, pursuant to the remand order, plaintiffs again applied to the Board for bulk variances to accommodate the satellite dish antenna on the roof of Scheurich's home. Plaintiffs requested variances from the height, location and screening requirements of the amended Haddon Heights Ordinance No. 724. The amended ordinance provides that a dish antenna is not permitted in the front of any structure and may not exceed a height of 12 feet. The ordinance also requires that the antenna be "screened, buffered or situated in such a manner that it cannot be visually seen from the public right of way abutting the lot on which the structure is situated or visually seen from the ground level of any adjacent property."
On January 14, 1986, the Federal Communications Commission adopted a rule that preempts state and local zoning regulations which differentiate between satellite-receive only antennas and other types of antenna facilities unless such regulations:
(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and
(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment. [47 C.F.R. § 25.104.]
Since Ordinance No. 724 applied only to satellite dish antennas, the parties agreed that the Board had to determine whether the ordinance satisfied the federal criteria on unreasonableness and cost-effectiveness. The plaintiffs do not challenge the "reasonable and clearly defined ... aesthetic objectives" of the Haddon Heights ordinance.
Scheurich's single-story home is located at 1920 Sycamore Street in Haddon Heights. The property has a 50-foot front, a depth of 125 feet, and is located in a residential zone.
In February 1988, Raphael Morales, Nationwide's chief engineer, testified before the Board on behalf of plaintiffs' application. *23 He explained that a satellite dish antenna operates as a collector for satellite signals and that a satellite dish antenna on the east coast of the United States must have a minimum diameter of ten feet in order to receive satellite signals. He noted that in order to receive signals there must be a direct "line-of-sight" between the satellite and the dish antenna; if this "line" is blocked by a tree or a structure, the signal will not be received.
Morales said that transmitting satellites are located in a geostationary orbit about 23,700 miles above the equator. According to Morales, there are 18 satellites which transmit video or audio signals to the east coast of the United States. They are located in southern, southwestern and western sky elevations. The line-of-sight for these satellites with respect to Scheurich's satellite dish antenna is between 15 and 45 degrees above the horizon. There are seven western satellites, six southwestern satellites, and five southern satellites. Together, they provide about 100 audio channels and 100 video channels. Morales thought that the western satellites were the most important to a typical customer because they transmit most of the premium movie channel signals.
Morales claimed that a "standard" satellite dish antenna is usually installed on the ground and that the center of the satellite dish is generally about seven feet from ground level. He said that a standard satellite dish installation in Scheurich's rear yard is not feasible because the location of two trees on the property and a large tree in a neighboring yard would interfere with reception of satellite signals, including those transmitted by western satellites. In order to position a satellite dish antenna in Scheurich's rear yard for optimum signal reception, Morales said that the satellite dish would have to be mounted on a 35-foot tower. This tower would cost about $3,500 to $4,000 and, of course, would be visible from the street and neighboring yards. Without this enhancing tower, Morales testified that a satellite dish antenna located in Scheurich's rear yard would receive only seven of the 200 available channels.
*24 Morales testified that the satellite dish antenna could be placed, as it is now, on the left-front roof of Scheurich's house to achieve a direct line of sight with all of the satellite signals. Morales said that if the interfering trees were trimmed, a satellite dish antenna could be placed in Scheurich's rear yard and some of the southern satellite signals could be received. However, reception from the western satellites would not be possible. Morales also said that because of the large number of trees in the neighborhood, all of the other neighborhood lots would be unsuitable for ground installation of satellite dish antennas.
Louis Lacatena, owner of a tree service, testified that removal of the offending maple tree in the rear of Scheurich's property and the trimming of a larger tree on the rear of the lot would cost $500. The cost to remove, rather than to trim, the second tree was $300.
Leonard Siegel, a professional engineer, was hired by the Board to evaluate Scheurich's property to determine whether a satellite dish antenna located in the rear of the property would be feasible. Siegel opined that a ground-level satellite dish antenna could be installed in Scheurich's rear yard in accordance with the applicable zoning ordinance. He said that a satellite dish antenna so installed would permit reception from the southern and southwestern satellites and possibly from the western satellites. Moreover, Siegel asserted that if Scheurich's trees were trimmed, clearance and thus signal reception would improve. He conceded that the large tree on the neighboring lot could create signal interference and suggested that perhaps Scheurich and his neighbor could make an agreement to trim or remove that "offending" tree. Ultimately, Siegel admitted that he could not say how a ground-level installation of the satellite dish antenna would affect signal reception from the western satellites. He said that since western-satellite reception required a 15-degree line-of-sight elevation, signal reception would be problematic no matter where the satellite dish antenna was placed. Plaintiff Scheurich testified that *25 when the satellite dish antenna was operating on the front roof of his house, he did not experience any problem with signal reception.
Joseph Keefer, a real estate broker, also testified. In his opinion, a satellite dish antenna placed on the roof of Scheurich's house would detract from the property values of the surrounding homes. However, during cross-examination, Keefer stated that there were no other satellite dish antennas installed on roofs in Haddon Heights and that he was personally unaware of properties which had been adversely affected by the roof installation of satellite dish antennas.
Finally, three neighbors voiced their concerns about the aesthetic impact of a satellite dish antenna installed on the roof of Scheurich's house. The following comments are representative of the sentiments expressed:
MR. SCOTT: Okay. I've been a resident of the town for over 35 years, and I would hate to think that it's coming to a point, you know, where we have to even do away with our shade tree program as far as the streets and the backyards and everything else goes and to see these antennae, even if they're ground level, even in a backyard, much less on top of a roof. I would just hate to see, you know, if this gentleman has the right to do it, why would I not have the same right or anybody in the neighborhood or in the whole town? It would be one unsightly mess to say the least. Thank you.
* * * * * * * *
MR. DALGLEISH: I'm mainly concerned with the effects on property value. I'm not that far from retirement, and most of the neighbors around me are already retired, and this is sort of an investment in our retirement income. If the property values go down, that's going to affect all of us, and we're somewhat concerned about that aspect of it. So I was glad to hear what the realtor had to say about this. If we can't see the antenna, then I don't imagine it's going to have much effect on property value, but if you can see it wherever it is, it would have some effect in my opinion. A ten-foot antenna on a 20-foot house does look a bit odd, and many ten-foot antennas on quite a few houses would really detract from the appearance of the community. And I would be mainly interested wherever  whatever you decide, if you keep the ordinance you have now, it sounds okay with me, would you have your  what would we call it  the borough appraiser. Does he have a name? I guess borough appraisers look into any change in the estimated market value of the property and adjust the taxes accordingly.
*26 On the continued hearing date in March 1988, Nationwide's chief engineer, Morales, again testified. He said that he had visited Scheurich's property and, using an instrument known as a "bird" or satellite finder, had simulated the exact azimuth elevation and rotation of the western satellites. Based upon his calculations, even if the large tree on the neighboring lot were cut down, there were other trees located in Scheurich's rear yard that would interfere with reception from the western satellites. If the satellite dish antenna were mounted on the rear roof of Scheurich's house, the neighbor's tree would still block satellite reception. In Morales' opinion, the only method of receiving signal reception from the western satellites would be to trim the existing trees and to mount the satellite dish antenna at a higher elevation.
On April 19, 1988, the Board voted unanimously to deny plaintiffs' bulk variance request. The Board found that plaintiffs failed to demonstrate "an undue hardship within the meaning of the Zoning Law," failed to demonstrate that "the benefit in granting the variances required for the subject dish antenna substantially outweighed any detriments which would result from granting the variances" and failed to sustain their burden of proving that "the granting of the variances would not be substantially detrimental to the Zone Plan, particularly as it relates to aesthetics and adverse impact on neighboring property values." In addition, the Board concluded that "application of the ordinance to Scheurich's property does not impose an unreasonable limitation on reception of satellite-delivered signals even if the reception is impaired to some degree by the trees in the neighboring property." The Board found that Scheurich could comply with the ordinance requirements by placing the satellite dish antenna in the rear yard of his property. In this way, Scheurich could receive reasonable signal reception with a minimum amount of tree trimming. The Board found that the costs associated with tree trimming were not excessive in view of the purchase and installation cost of the satellite dish antenna.
*27 The plaintiffs then renewed their complaint in lieu of prerogative writs action challenging the Board's determination. The matter was again heard by Judge Lowengrub of the Chancery Division. Plaintiffs did not present any additional evidence. The Board, however, called Leonard Siegel, the engineer who had testified previously at the Board hearings. He expressed his view that it was technologically possible for Haddon Heights property owners to receive satellite signal reception while complying with the location, height and screening requirements of the Borough's satellite dish antenna ordinance.
Judge Lowengrub found that Haddon Heights Zoning Ordinance No. 724, as amended, imposed an unreasonable limitation on the reception of satellite delivered signals by receive-only antennas. He stated that applicable Federal Communications Commission regulations place a "heavy burden" upon the municipality to demonstrate that its satellite dish antenna ordinance is not unreasonable. The judge specifically found that the height and screening requirements of the municipal ordinance were restrictive and adversely affected the ability to receive signals from the three satellite groupings. He held that the Haddon Heights satellite dish antenna ordinance violated the Federal Communications Commission rule, 47 C.F.R. § 25.104, and that this rule preempts the Borough's ordinance as applied in this particular case.
The Board asserts that the trial judge erred when he determined that the Haddon Heights satellite dish antenna ordinance, as amended, was preempted by Federal Communications Commission rule, 47 C.F.R. § 25.104. Principally, defendant argues that the provisions of the municipal ordinance are neither facially invalid nor invalid as applied to Scheurich's property. We conclude that the trial judge properly held the ordinance invalid as applied to this property owner because it imposed unreasonable limitations on reception of satellite-delivered signals by a receive-only antenna. This conclusion is essentially a factual determination in this particular situation. *28 Since the finding was adequately supported in the record, we must affirm. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
In 1983, Congress passed the Cable Communications Policy Act of 1984 (Act), amending the Communications Act of 1934, in order to assure that the expanding market for cable television technology would provide the widest possible diversity of information services to the public. Alsar Technology v. Zon. Bd. of Adj., 235 N.J. Super. 471, 479, 563 A.2d 83 (Law Div. 1989). On January 14, 1986, the Federal Communications Commission adopted the pertinent rule, 47 C.F.R. § 25.104, preempting local regulations which interfere with the federal objective of promoting interstate satellite-recovered communications.
The FCC issued the regulation relying in part upon the Act's satellite television provisions. Van Meter v. Township of Maplewood, 696 F. Supp. 1024, 1028-1029 (D.N.J. 1988). The FCC's rule was prompted by complaints from the satellite television industry that some local regulations of satellite receiving antennas improperly discriminated in favor of other types of television communication, such as cable television, or unreasonably burdened a homeowner's reception of satellite signals. Hunter v. City of Whittier, 209 Cal. App.3d 588, 257 Cal. Rptr. 559, 561 (Ct.App. 1989).
As noted, the FCC rule provides in pertinent part:
State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations:
(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and
(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment. [47 C.F.R. § 25.104.]
On appeal, defendant does not challenge the FCC's authority to adopt this rule preempting noncomplying satellite dish antenna ordinances. See generally, City of New York v. FCC, 486 U.S. 57, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988) (a federal regulation *29 will preempt state or local law if (1) the agency intended to exercise exclusive authority in the area and (2) the agency is legally authorized to displace state or local regulation). Rather, defendant maintains that the ordinance at issue satisfies the federal criteria and thus should not have been preempted.
Haddon Heights Ordinance No. 724, as amended, provides in relevant part:
Section II. Findings and Purpose.
The Borough Council of the Borough of Haddon Heights has become concerned about the appearance and impact of dish antennas. We find that unless regulated, dish antennas can be installed in such a manner as to make them aesthetically unpleasant, with an adverse impact on surrounding property values. The intent and purpose of this ordinance is to establish a procedure and criteria to avoid such adverse impact and preserve the character, beauty and general welfare of the community.
* * * * * * * *
Section VI. Conditional Use.
The satellite earth station, commonly known as a "satellite dish" is permitted in all zones as a conditional use after the following requirements are met:
........
B. A dish antenna is not permitted in the front of any structure.
........
E. No dish antenna placed anywhere on any lot shall exceed a height of twelve (12) feet, and the surface area of any dish antenna may not exceed a diameter of ten (10) feet.
F. The structure must be screened, buffered or situated in such a manner that it cannot be visually seen from the public right of way abutting the lot on which the structure is situated or visually seen from the ground level of any adjacent property.
G. If the satellite antenna is to be placed on a side yard due to inaccessibility of a rear yard, it is to conform to the same regulations as are required for the principal buildings in the Code of the Borough of Haddon Heights.
* * * * * * * *
Section IX. Variances.
This article is a zoning regulation. Relief from the terms therefore, shall be effected by application for variances from the terms of this article presented to the Board of Adjustment of the Borough of Haddon Heights by utilizing the same procedures set forth for variance application under the terms of the Borough Code of the Borough of Haddon Heights and Title 40 Chapter 55 of *30 the New Jersey Statutes and the rules and regulations of the Board of Adjustment.
Since the ordinance differentiates between satellite receive-only antennas and other types of antennas, it is preempted unless it satisfies both the (a) and (b) criteria of the federal rule. The parties do not dispute that the ordinance satisfies the criteria of section (a) since the Haddon Heights ordinance was clearly enacted to provide guidelines for the aesthetic placement of satellite dish antennas.
The parties disagree as to whether the section (b) criteria of the federal rule are satisfied by the provisions of the ordinance. The Borough argues that because the ordinance provisions do not impose unreasonable limitations on, or prevent, satellite signal reception and do not impose excessive costs on satellite users in light of the costs associated with the purchase and installation of satellite dish antenna equipment, the ordinance is not preempted by the federal rule. In opposition, plaintiffs assert that the height, location and screening requirements of the Haddon Heights ordinance place unreasonable limitations upon satellite signal reception.
Judge Lowengrub specifically found that the Borough "is rightly concerned with aesthetics and that is a valid reason for the zoning ordinance." But he recognized "that the ordinance must not operate to impose unreasonable limitations on or prevent reception of satellite-delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in the light of purchase and installation costs of the equipment." He found that even with the proposed tree trimming and tree removal there "would still be the requirement for a thirty-five-foot tower to get the satellite signals over the top of the neighbor's trees." The judge accepted the testimony of Morales that a tower would "be very expensive ... in order to meet OSHA's specification, $3500 to $4000 [compared to the cost] of a satellite dish antenna between $5000 and $5500," which installation cost he concluded was excessive. He also found the proposal of entering into an agreement with *31 the neighbor to trim or remove the tree in his yard was "an unreasonable burden on [Scheurich's] right to use a satellite dish antenna which could be totally within his property." He concluded that the FCC rule "preempt[s] the ordinance as it has been adopted. That is not to say that an ordinance consistent with the preemption by the FCC cannot be properly enacted."
As noted, we conclude that there was a sound factual basis for the trial judge's conclusion. We cannot disturb it. Rova Farms Resort, 65 N.J. at 484, 323 A.2d 495. The federal regulatory mandate favoring satellite communication over local aesthetics must prevail under the federal preemption doctrine. If Haddon Heights wishes to differentiate between satellite receive-only antennas and other types of antenna facilities, it must not "impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or ... impose costs on the users of such antennas that are excessive in light of the purchase and installation costs of the equipment." 47 C.F.R. 25.104(b).
Recently, several courts have considered whether particular local regulation of satellite dish antennas satisfy the federal criteria of 47 C.F.R. § 25.104 or whether the local regulations were preempted. Van Meter v. Township of Maplewood, 696 F. Supp. at 1029; Alsar Technology v. Zon. Bd. of Adj., 235 N.J. Super. at 480-484, 563 A.2d 83; Hunter v. City of Whittier, 257 Cal. Rptr. at 565-566. In each case, these courts determined that because the local regulation under review did not satisfy the federal standards, they were federally preempted and invalid.[1] In L.I.M.A. Partners v. Borough of Northvale, *32 219 N.J. Super. 512, 520-522, 530 A.2d 839 (App.Div. 1987), we remanded for consideration of the preemption issue on an adequate record. See also Minars v. Rose, 123 App.Div.2d 766, 507 N.Y.S.2d 241 (App.Div. 1986).
In Van Meter v. Township of Maplewood, Federal Judge Debevoise ruled that a local satellite dish antenna ordinance providing that a satellite dish antenna could not exceed six feet in height, that it must be located in a rear yard and that it must be screened from view by an evergreen planting of at least six feet in height at the time of planting, placed unreasonable limitations upon satellite signal reception and imposed costs upon the satellite dish user that "could easily exceed the initial investment in satellite television equipment." Van Meter, 696 *33 F. Supp. at 1030-1031. He found that the height restriction imposed by the local ordinance would make television satellite reception technically impossible since the angle required for satellite reception in northern New Jersey could not be achieved in view of the height limitation. Id. at 1031. Additionally, the court found that the ordinance was "insensitive" to the unique conditions that govern reception on individual lots. Id. at 1030.
Moreover, the court found that the FCC, in its order adopting the satellite dish antenna rule, expressly disapproved of the type of local screening restrictions involved in the case. 51 Fed.Reg. 5519, 5524 (1986) ("an ordinance cannot unreasonably limit or prevent reception by requiring, for example, that a receive-only antenna be screened so that line-of-sight is obscured." Ibid.). Further, the court found that the cost of screening a satellite dish antenna with evergreens to shield it from view of adjoining properties could be prohibitive, easily exceeding the cost of purchasing satellite television reception equipment. Van Meter, 696 F. Supp. at 1031.
The court determined that the Maplewood ordinance unreasonably restricted reception by failing to provide for alternative satellite dish antenna placement for those users who would receive only diminished reception through a rear lot installation. The court did not ignore the apparent aesthetic concerns of the ordinance's rear-lot location provision, but ultimately concluded that:
While roof-mounting poses obvious aesthetic and safety problems, a per se prohibition of roof installations, especially where the community interests in appearance and safety can be satisfied at least in part, is an unreasonable limitation on reception within the meaning of the [FCC rule]. [Ibid.]
Similarly, the Haddon Heights satellite dish ordinance implicitly proscribes placement of a satellite dish antenna on a user's roof. Only rear or side lot installations appear to be permitted. Although the height limitation included in the Haddon Heights ordinance is twice that of the six-foot limitation included in the Maplewood ordinance reviewed by the Van Meter court, Morales testified before the Board that optimal satellite signal *34 reception could only be achieved in Scheurich's rear yard by placing the satellite dish antenna on a 35-foot tower.
Plaintiffs admit that the Van Meter court recognized that the FCC regulation does not require a local ordinance to permit "optimal" satellite dish installation. However, if plaintiffs' satellite dish were installed in Scheurich's rear yard in compliance with the Haddon Heights satellite dish ordinance, his reception would be severely curtailed. Testimony before the Board indicated that if a satellite dish antenna were installed in Scheurich's rear yard, he would receive only a handful of the 200 available channels. He would be unable to receive those satellites transmitting the bulk of the movie channel signals  probably the most desirable satellite signals. Consequently, the trial judge's ruling that the Haddon Heights ordinance's height and location restrictions imposed unreasonable restrictions upon satellite reception in contravention of the federal rule was adequately supported by the proofs.
Although the screening requirements of the Haddon Heights ordinance appear less restrictive than those in the Maplewood ordinance under review in Van Meter  the Haddon Heights ordinance does not specifically require evergreen plantings as did the Maplewood ordinance  the Haddon Heights screening requirements are, nevertheless, onerous and unreasonable. If the satellite dish installation must be screened, buffered or situated in such a way that it cannot be visually seen from the ground level of adjacent properties, such comprehensive screening would undoubtedly obstruct the line-of-sight required for satellite signal reception.
In Alsar Technology Inc., the Law Division invalidated a Nutley satellite dish installation zoning ordinance, finding that it failed to set forth a clearly-defined health, safety or aesthetic objective, the FCC rule section (a) criteria, and that the ordinance prevented satellite signal reception on the homeowner's property due to the lack of rear yard space, the section (b) criteria. Alsar Technology, 235 N.J. Super. at 482-483, 563 *35 A.2d 83. That court also found that the Nutley ordinance's seven-foot evergreen screening requirement was unreasonable because it failed to recognize the impact of such screening on an antenna's reception window. Id. at 481, 563 A.2d 83. The court observed that, according to the FCC, a regulation requiring screening is unreasonable if the screening regulation obscures the line-of-sight required for the receipt of satellite signals.
Further, the court noted that the ordinance required that a satellite dish antenna must be installed in a rear yard and sheltered from view of the adjoining properties. If a property was adjacent to lots on either side of it, a homeowner would be required to plant evergreens around the boundary of his rear yard "... at a cost that could easily exceed the purchase and installation cost of the satellite dish equipment." Id. at 482, 563 A.2d 83.
The provisions of the Haddon Heights satellite dish antenna ordinance do not significantly differ from the provisions of the ordinance reviewed in Alsar Technology. The same concerns regarding the restrictions placed upon satellite signal reception are applicable. Surprisingly, the Alsar court questioned the aesthetic objective for limiting maximum height of a satellite antenna dish to seven feet as opposed to eight or ten feet. Id. at 480, 563 A.2d 83. However, plaintiffs here do not challenge the clearly-defined aesthetic purpose of the Haddon Heights ordinance and seemingly agree that the section (a) criteria of the federal rule are satisfied by the provisions of the Haddon Heights ordinance.[2]
Recently, a California appeals court held that a local ordinance setting forth general standards for issuance of a conditional use permit, enacted prior to the FCC's preemption rule, was not sufficiently specific to satisfy the FCC criteria regarding *36 satellite dish antennas. Hunter v. City of Whittier, 257 Cal. Rptr. at 564. In that case, plaintiffs had installed satellite dish antennas on the roofs of their homes. The City of Whittier subsequently enacted an ordinance that required a satellite dish antenna owner to obtain a conditional use permit. City officials informed the plaintiffs that a conditional use permit would be granted only if the antennas were installed on the ground and if the antennas were screened so as to prevent visibility from the street or surrounding properties. Id. 257 Cal. Rptr. at 560. Having exhausted their administrative appeals, the plaintiffs filed an action to restrain enforcement of the ordinance. The trial court granted a preliminary injunction and the City appealed.
The appellate court determined, as a matter of law, that the City's ordinance did not comply with the criteria of the federal rule because it did not set forth screening or placement requirements. Instead, these requirements were determined on an ad hoc basis by building inspectors, or by the zoning administrator. Id. 257 Cal. Rptr. at 565-566. The court found that the only legislative criteria to guide these officials in making their determinations were "that the proposed use will not unreasonably interfere with the use, possession and enjoyment of surrounding and adjacent properties" and that "the proposed use will be compatible with the permitted uses of surrounding and adjacent properties." Id. 257 Cal. Rptr. at 565.
The California court concluded that these guidelines gave administrative officials unduly broad discretion "in light of the FCC's requirements that aesthetic objectives must be clearly defined and must take into account the owner's federal rights." Ibid. In addition, the court relied upon New Jersey's federal court decision in Van Meter v. Township of Maplewood, when it rejected the City's argument that a homeowner who was unable to achieve satellite reception within the constraints imposed by the Whittier ordinance, could seek a zoning variance. Id. 257 Cal. Rptr. at 566.
*37 In the present matter, the parties argue about whether the Haddon Heights satellite dish ordinance is facially invalid or whether it is invalid only as applied to Scheurich's property. This distinction was not raised in the cases discussed that have analyzed local ordinances in light of the federal regulation, and we believe that under the circumstances here it is essentially a distinction without consequence. The location and screening restrictions of the Haddon Heights satellite antenna ordinance seem to render it facially invalid since these restrictions could not be satisfied without violating the federal rule in virtually all conceivable applications. However, we need not decide the question of facial invalidity as the Borough's ordinance is clearly invalid as applied to the Scheurich property.
Defendant maintains that the Haddon Heights ordinance satisfies the federal criteria since its expert, Leonard Siegel, had testified that it was "technologically" possible for Haddon Heights property owners to receive satellite signal reception while complying with the ordinance's location, height and screening requirements. However, Siegel could not say how a ground-level installation would affect signal reception from the western satellites, apparently the most important satellite grouping because it transmits most of the movie channel signals. Although the federal rule does not require that local ordinances permit installation of satellite dish antennas in such a way as to optimize satellite signal reception, the rule does prohibit local laws which impose unreasonable limitations on reception or which prevent reception of satellite signals. 47 C.F.R. § 25.104. Here, the judge justifiably concluded that the restrictions of the Haddon Heights ordinance will impair satellite signal reception to such a degree that reception as contemplated by the federal rule will effectively be prevented.
Although the federal rule seems harsh on local zoning controls and seemingly does not take into account a community's interest in preserving an aesthetically pleasing facade, the FCC has noted that "[c]ommunities which are truly concerned *38 with preserving their unique historic character may do so if they do not discriminate against satellite receive-only antennas." 51 Fed.Reg. 5523 (1986) That is, local regulations may impose reasonable requirements on all antennas "... as long as these local standards are uniformly applied and do not single out satellite receive-only facilities for different treatment." Id. Stated alternatively, the FCC noted that "[c]ommunities wishing to preserve their historic character may limit the construction of `modern accoutrements' provided that such limitations affect all fixed external antennas in the same manner." Consequently, the FCC has "emphasized" that when an ordinance does discriminate between satellite dish antennas and other types of antennas, "a community bears a heavy burden to justify its actions." In the Matter of Preemptions or Other Regulations of Receive-Only Satellite Earth Stations, CC Docket No. 85-87 (January 14, 1987).
The Borough also asserts that the trial judge erred when he placed the burden of proof on defendant and overlooked the well-settled tenet that the burden of proving the invalidity of a municipal ordinance lies with the party challenging the ordinance. We find this contention unavailing. Generally, "[m]unicipal ordinances are to be liberally construed in favor of the municipal entity and are presumed to be reasonable, with the burden of persuasion as to arbitrariness and unreasonableness placed upon the parties seeking to overturn the ordinance." State (Borough of Paramus) v. Malcolm Konner Chevrolet, 226 N.J. Super. 692, 696, 545 A.2d 275 (Law Div. 1988); accord, Quick Check Food Stores v. Springfield Tp., 83 N.J. 438, 447, 416 A.2d 840 (1980).
However, this presumption does not apply when federal law supersedes. Congress, through the regulatory medium, has acted to limit the otherwise broad powers of a municipality to enact zoning provisions. Accordingly, the FCC has ruled that when a local ordinance discriminates between satellite dish antennas and other antennas, the municipal body bears a "heavy burden" in justifying its actions. The burden of proof here was properly placed upon the defendant Borough, and not *39 upon plaintiffs, to demonstrate that the Haddon Heights satellite dish ordinance complied with the federal criteria in order to avoid preemption. See Jersey Cent. Power & Light Co. v. Lacey Tp., 772 F.2d 1103, 1109-1112 (3rd Cir.1985), cert. den. 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). The trial judge correctly found that defendant did not meet its burden of proof.
We only note that an ordinance drafted to accommodate the FCC rule might be sustainable in certain applications. Of course, an ordinance banning all fixed external antenna in a zoning district might also pass FCC muster.
Affirmed.
NOTES
[1] Other pertinent recent cases include:

City of Bloomfield Hills v. Gargaro, 178 Mich. App. 163, 443 N.W.2d 495, 498 (Ct.App. 1989), where the Michigan Court of Appeals found the record insufficient to decide whether the satellite dish width requirement of a local zoning ordinance imposed an unreasonable limitation on, or prevented, reception of satellite signals. Additionally, the court found that because the trial court had failed to set forth any factual findings as to whether the screening requirements of the ordinance at issue would impose unreasonable limitations upon satellite signal reception or whether these requirements would be prohibitively expensive in light of the purchase and installation cost of the satellite equipment, the matter would be remanded to permit the trial court to address these issues. Id. 443 N.W.2d at 498-499.
In Village of Elm Grove v. Py, 724 F. Supp. 612, 617 (E.D.Wis. 1989), a federal district court determined that a municipality's ordinance governing the location, size and height of satellite dish antennas was preempted by 47 C.F.R. § 25.104. The ordinance at issue was, in one respect, less restrictive than the Haddon Heights ordinance since it provided that satellite dish antennas could be located on the roof of a building if a "usable satellite signal" could not be received from either a rear or sideyard installation. Id. at 615. However, the height and width requirements of the ordinance  a ground-mounted dish antenna could not exceed ten feet in height and eight feet in diameter  were more restrictive than the Haddon Heights ordinance. Ibid. Importantly, the Elm Grove court cited with approval Judge Debevoise's observation in Van Meter, 696 F. Supp. at 1031, that a municipal variance procedure may fail to accommodate the FCC rule and, thus, could amount to an unreasonable limitation on satellite signal reception. Village of Elm Grove, 724 F. Supp. at 617.
Lastly, in Easlick v. City of Lansing, 875 F.2d 863 (6 Cir.1989) (text in Westlaw), a summary decision, the Sixth Circuit affirmed the district court's finding that a Lansing, Michigan zoning ordinance was not federally preempted. Since the ordinance at issue in Easlick did not differentiate between satellite receive-only antennas and other types of antennas, the court found that the preemption provisions of 47 C.F.R. § 25.104 were inapplicable.
[2] The "Findings and Purpose" of the Haddon Heights ordinance are set out in Section II. See ante at 29, 578 A.2d at 395.