724 F.Supp. 612 (1989)
VILLAGE OF ELM GROVE, Plaintiff,
v.
Arthur PY and Harold E. Protter, Defendants.
Harold E. PROTTER, Plaintiff,
v.
VILLAGE OF ELM GROVE, Defendant.
Nos. 87-C-623, 87-C-463.
United States District Court, E.D. Wisconsin.
August 29, 1989.
David J. Cannon, Robert M. Ling, Jr., James E. Bauman, Michael, Best & Friedrich, Milwaukee, Wis., for Arthur Py and Harold E. Protter.
Hector de la Mora, de la Mora & de la Mora, Elm Grove, Wis., for Village of Elm Grove.

DECISION AND ORDER
STADTMUELLER, District Judge.

Introduction
Harold E. Protter erected a satellite television receive-only antenna (TVRO, dish) on his property. This antenna's parabolic dish exceeds size limitations set forth in Elm Grove's zoning ordinances, and is mounted on a tower exceeding village height limitations for TVRO antennas. He brings suit against Elm Grove contending that the Elm Grove ordinance regulating such antennas is preempted by federal regulation and violative of Protter's constitutional rights. Elm Grove, in turn, brings an action against Protter and Protter's former landlord for violating various village ordinances concerning the antenna and a fence on Protter's property. The matter is before *613 the court on Protter's motion for partial summary judgment.

I. Motion to File Amicus Brief

The Satellite Broadcasting and Communications Association of America (SBCA) seeks leave to file an amicus curiae brief in support of Protter's motion for partial summary judgment. Elm Grove opposes this motion. The SBCA has its own particular interests in the outcome of this litigation. Its proposed contribution is unnecessary at this juncture. It appears both parties are competently represented. The motion to file an amicus curiae brief will be denied.

II. Partial Summary Judgment Motion

A. Preemption
Protter contends the pertinent Elm Grove zoning ordinance is preempted by 47 C.F.R. § 25.104 (1988) (FCC Regulation). The FCC Regulation provides:
State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations:
(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and
(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment.
Regulation of satellite transmitting antennas is preempted in the same manner except that state and local health and safety regulation is not preempted.
Elm Grove admits that § 12B of the village ordinance differentiates between satellite receive-only antenna and other types of antenna facilities. The ordinance contains specific limitations on location, size and number that apply solely to satellite receive-only antennas. Therefore, if the ordinance: (1) lacks a reasonable and clearly defined health, safety or aesthetic objective; or (2) imposes unreasonable limitations on, or prevents, reception of satellite delivered signals by receive-only antennas or imposes costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment, then the ordinance is preempted by the FCC regulation.
Before applying these standards, it is necessary to consider a preliminary issue. Specifically, Elm Grove questions whether Protter is in the class of persons protected by the FCC Order. Protter is a vice president of Gaylord Broadcasting Company and general manager of WVTV-Channel 18, a Milwaukee television station. Citing Protter's deposition, Elm Grove indicates that Protter uses the antenna as a quality control aid in his capacity as general manager of Channel 18; that he periodically has an artist view satellite broadcasts with him in his home to assess the uniqueness of his own station's graphic style; and that "[a]pproximately thirty-three percent of Protter's satellite reception is of a non-consumer type." Brief in Opposition to Motion for Summary Judgment, 4.
The Report and Order creating the FCC regulation speaks of protecting "citizens" and "individuals" against discriminatory regulation. Elm Grove argues that Protter does not fall into this class because his antenna is used in a "residentially zoned neighborhood for purposes predominately related to the advancement of a commercial enterprise." Id. at 5. Elm Grove characterizes such use as placement of "television transmission and/or reception substations." Supplemental Brief in Opposition, 3. Allowing this use, the village contends, will effectively undermine local ability to administer residential zoning restrictions. "Certainly, the FCC did not have this type of use in mind when it promulgated this regulation." Brief in Opposition, at 5.
This argument lacks merit. The Report and Order creating the FCC regulation does not carry any indication that its use of such terms as "individuals" and "citizens" somehow excludes persons who find that a *614 TVRO antenna provides them with useful business information, whether or not they are employed in the broadcast industry. Because he has a receive-only antenna, Protter's home is not a "television transmission substation," if these words bear their usual meaning. As a television "reception substation" his home is not clearly distinguishable from any other neighboring home equipped with a functioning television but without a satellite antenna, except that Protter's television presumably has access to more channels. Whatever the FCC had in mind, neither the Regulation nor the promulgating Report and Order distinguish between commercial and non-commercial users for purposes of extending protection.

1. Reasonable and Clearly defined health, safety or aesthetic objective.

Elm Grove argues that the ordinance sections at issue are integral parts of Elm Groves entire zoning code chapter, which contains clearly defined health, safety and aesthetic objectives. Elm Grove points to the zoning ordinance preamble, which indicates that the ordinance is promulgated "to provide adequate light, pure air, and safety from fire and other dangers, to conserve the taxable value of land and buildings throughout the Village, to avoid congestion in the public streets and highways, and to promote the public health, safety, comfort, morals and welfare, all in accordance with a comprehensive zoning plan." Village of Elm Grove Code of Ordinances, Preamble to Chapter 6, the Zoning Ordinance.
Elm Grove also points out that Chapter 6, § 12B.06 of the zoning ordinance (ordinance) indicates specific objectives. Section 6.12B.06(a) provides that satellite television antennas shall be colored so as to blend into their surroundings. Further, all antennas "shall be landscaped so as to screen them from the view of people on streets and surrounding lots. [But this] screening is not required to be so complete that it interferes with the reception of the antenna." Ordinance § 6.12B.06(b). These two provisions aim to minimize the visual impact of large antenna structures.
Other provisions set forth clear public health and safety objectives. All antennas must be grounded to protect against lightning strikes, § 6.12B.06(c), and "erected in a secure, wind-resistant manner." § 6.12B.06(d). Antenna connecting wires must be buried. § 6.12B.06(e).
These provisions and their purposes clearly enough reflect legitimate concerns for safety and property value. But these concerns are unrelated to Elm Grove's differentiation between satellite antennas and other antenna facilities. Elm Grove contends that 47 C.F.R. § 25.104 does not "state that the local regulation must also state within the text of the ordinance the rationale behind the objective as well as justify each element of the ordinance utilized to reach that objective." Elm Grove's point, apparently, is that 47 C.F.R. § 25.104 only requires the ordinance to have "a reasonable and clearly defined health, safety or aesthetic objective." This argument renders the requirement ineffectual by overlooking the objective's function of justifying differentiation between TVRO and other antenna facilities. The report on the FCC Regulation states:
We have retained the use of health, safety and aesthetic objectives but have merely required these to be "reasonable" and "clearly defined." .... [R]equiring local authorities to justify a differentiation in treatment will help ensure that local zoning power is not used to restrict unreasonably the installation of satellite receive-only antennas.
In the Matter of Preemption of Local Zoning or Other Regulation of Receive-Only Satellite Earth Stations, 51 Fed. Reg. 5519 (1986) (footnotes omitted). While perhaps not perfectly explicit, this passage clearly affirms that demanding "a reasonable and clearly defined health, safety or aesthetic objective" is a means of "requiring local authorities to justify a differentiation in treatment [in order to] help insure that local zoning power is not used to restrict unreasonably the installation of satellite receive-only antennas."
With the exception of the requirement that a satellite television antenna be colored *615 to blend into its surroundings, the provisions of § 6.12B.06 quoted above all apply to any antenna located outside of a main or accessory building as well as satellite television antennas. Ord. § 6.12B.01(c) Elm Grove has an interest in minimizing antenna unsightliness. Such an interest would seem to suggest that different types of antenna be treated alike. The village may have found parabolic antennas less likely to blend in with their surroundings than other antenna facilities.
Elm Grove's ordinance does reflect a number of legitimate zoning concerns. The various safety provisions cited above appear unquestionably reasonable and are not disputed. Similarly, the parties do not appear to dispute the reasonableness of requiring a construction permit before erecting an antenna. Ordinance § 6.12B.05. Such a requirement may serve a number of objectives, not the least being to assist in ensuring compliance with other safety provision. None of these objectives appears as a basis for differentiating between satellite receive-only antennas and other types of antenna facilities.
The ordinance chiefly distinguishes between different types of antenna facilities based on antenna location, size and number. No antenna facility may be placed in the front yard of any lot, or, on corner lots, in either yard facing a street or road. Ord. § 6.12B.03(a). Section 6.12B.03 further provides, in pertinent part:
(b) Satellite television antennas may be placed on a lot in the Village of Elm Grove only in the following manner:
(1) If a usable signal is receivable with the antenna which is located in the rear yard, the antenna may be located only in the rear yard.
(2) If the antenna cannot receive a usable satellite signal in the rear yard but can receive such a signal while located in a side yard, the antenna may be located only in a side yard. For corner lots, a side yard is only a yard that does not face a street or road.
(3) If the antenna cannot receive a usable satellite signal from either the rear or side yards, the antenna may be located only on the roof of any main or accessory building on the lot.
(4) The Building Board of the Village of Elm Grove shall determine whether a signal constitutes a usable satellite signal, based on evidence provided to the Building Board by the person seeking a permit to erect or construct the antenna.
Section 6.12B.04 regulates satellite television antenna size and number in the following manner:
(a) No ground-mounted satellite television antenna may exceed ten (10) feet in height, as measured from the ground to the highest point of the antenna.
(b) No roof-mounted satellite television antenna may exceed two (2) feet in height, as measured while it is sitting on the ground.
(c) The diameter of satellite television antennas shall not exceed eight (8) feet for ground-mounted antennas and (2) feet for roof-mounted antennas.
(d) At any one time, no lot may have existing or erected more than one large (i.e., in excess of four (4) feet in diameter) or three small (i.e., less than four (4) feet in diameter) satellite television antennas.
Elm Grove's location requirements appear primarily aesthetic in nature. Ordinance § 6.12B differentiates between TVRO antennas and other types of antenna facilities regarding acceptable locations for the facilities. As a rule, satellite dish antennas may be more obtrusive or unsightly than other large antenna facilities. The same reasoning may well apply to any argument that TVRO antennas are subject to particular size requirements for aesthetic reasons, though another large antenna facility may possess comparable surface area. These precise issues are not argued here. Assuming a legitimate aesthetic concern, the size and location limitations are valid if they do not impose excessive costs or unreasonably limit reception.
Elm Grove argues that important safety considerations underlie the height and size requirements. The village points out that parabolic dishes, even when utilizing mesh construction, may be subject to a high *616 amount of wind force because the dish shape will trap wind. Both dish and supporting structure must be constructed in a manner allowing for tremendous amounts of wind force. The larger the dish, or higher the supporting structure, the greater the wind force on the base of the structure. Further, Elm Grove argues, the building permit requirement provides regulation over construction quality.
This safety argument is not unreasonable. Protter does not counter the argument except to indicate that these considerations are not set forth in the ordinance. The record does not contain sufficient evidence to conclude whether either the size or height limitations, considered separately, are unreasonable.

2. Reasonable reception.

Together, the size and location requirements present a problem. Protter's antenna exceeds both the height and dish size limits of the Elm Grove ordinance. But its location on Protter's lot evidently could be found acceptable under the statute. An affidavit by Protter's antenna vendor and installer contends: a satellite dish at least ten to twelve feet in diameter is needed for "quality residential use"; Protter's antenna is positioned at the only site on Protter's property allowing effective reception; a height lower than thirty feet would appreciably decrease satellite reception due to obstruction by trees and foliage; and limiting satellite television antennas to eight feet in height and twelve feet in diameter imposes unreasonable limitations on reception. An affidavit by defendant's consulting engineer contends that Protter could attain reasonable reception using an antenna meeting the ordinance's size and height requirements at one location on the property by removing a few small shrubs and bushes. Protter does not directly dispute this contention, except to point out that the ordinance clearly does not permit an antenna in the location specified by defendant. In either case, there is no genuine dispute that Protter can not erect an antenna that conforms with the ordinance and affords reasonable reception.
Elm Grove acknowledges that Protter may face unusual problems in installing a satellite dish, but contends that the zoning variance process provides for such difficulties. This procedure is set forth as follows:
(1) On an appeal to the Board of Appeals, in the absence of proof to the contrary adduced before the Board of Appeals, a refusal to grant the building permit because of refusal of the Building Board to make the finding required herein shall be deemed to be based upon facts supporting the conclusion [identical to the "required finding," set forth in Ord. § 1.04(a)] that the exterior architectural appeal and functional plan of the proposed structure for which a building permit was refused would, when erected, be so at variance with either or so similar to the exterior architectural appeal and functional plan of structures already constructed or in the course of construction in the immediate neighborhood or the character of the applicable district, as to cause a substantial depreciation in the property values of said neighborhood within said applicable district.
(2) Any person entitled to appeal from the grant of or refusal of the Building Inspector to grant said building permit, may appeal to the Board of Appeals of the Village of Elm Grove in the same manner and with the same force and effect as if this ordinance had not been adopted and the Building Inspector had not taken such action independently of the Building Board.
Village of Elm Grove Code of Ordinances, § 1.04(e). This provision fails to accommodate the FCC Regulation. The village must allow for reasonable reception. Elm Grove's variance procedure allows the village to forbid antenna construction based solely on property value considerations and without regard for reasonable reception.
The FCC does not define "reasonable reception." I note that:
The main thrust of [the Cable Communications Policy Act of 1984] is to assure that the exploding market for cable television technology provides the widest possible diversity of information services to the public. See House Committee on *617 Energy and Commerce, Cable Communications Policy Act of 1984, H.R.Rep. No. 89-934, 98th Cong., 2d Sess. 19, reprinted in part in 1984 U.S.Code Cong. & Admin.News 4655, 4656.... [The Act] also contains a limited exception to liability for direct reception of unencrypted and authorized reception of encrypted satellite television transmissions. [47 U.S.C.] 605(b). Congress apparently believed that unrestricted market forces embodied in the purchasing decisions made by individual consumers would be the best means of determining the viability of this information distribution technology. See 120 Cong, Rec, S14,286 (Oct. 11, 1984) (statement of Sen. Packwood) reprinted in 1984 U.S.Code Cong. & Admin.News, 4742, 4747.
Van Meter v. Township of Maplewood, 696 F.Supp. 1024, 1028 (D.N.J.1988). The FCC "repeatedly has emphasized its policies to maximize consumer choices by developing a competitive marketplace for the provision of telecommunications goods and services." 51 Fed.Reg. at 5522. Developing a competitive marketplace to maximize consumer choices does not necessarily entitle consumers to receive every available satellite channel. "The FCC Order does not require the Ordinance to permit optimal placement; it precludes only `unreasonable' interference with satellite signal reception." Van Meter, 696 F.Supp. at 1030.
At least for purposes of preemption, I conclude that "reasonable reception" must conform to the express or implied definition indicated by 47 U.S.C. § 151 and 47 U.S.C. § 605, on which the FCC predicates its preemptive authority. Elm Grove's ordinance defines "usable satellite Signal." Ord. § 6.12B.01(b). Protter does not claim, and the record does not suggest, that this definition fails to comply with FCC requirements for reasonable reception. But the ordinance does not allow persons to attain reasonable reception where doing so means erecting an antenna that fails to conform to Elm Grove's size, height or location requirements. For this reason, 47 CFR 25.201 preempts Elm Grove's ordinance.
This conclusion raises the question whether Elm Grove's cause of action against Protter and Arthur Py, in Case No. 87-C-623, for failing to obtain a construction permit to erect the antenna tower, should be dismissed on the merits. The construction permit requirement satellite television antennas is contained in Ord. § 6.12B.05, providing in part that the permit must be obtained pursuant to § 3.03 of the Code of Ordinances. Though § 12B governing "Satellite Television Antennas" is preempted, it might be argued that § 3.03 nonetheless governs because it pertains to permits for constructing "any building or structure." But under either provision, Protter would effectively be seeking a variance through a procedure that, as indicated above, fails to accommodate the FCC regulation.
Moreover, as the court pointed out in Van Meter, 696 F.Supp. at 1031, allowing the Board of Appeals "to regulate [] antenna placement by granting variances from an invalidated ordinance would allow the Board to exercise authority without bounds. No standards for antenna placement would exist to guide the Board" or antenna users. Because the variance process is not guided by consistent, objective standards reflecting the FCC Regulation's requirements, it would amount to an unreasonable limitation on reception. And because Satellite television antennas are subject to different limitations than other antenna facilities under the ordinance, regulating antenna facilities through the variance process would impose procedural burdens upon satellite television antenna users that other antenna users are not required to bear. See Id. at 1032 (reaching similar conclusions with regard to invalidated ordinance governing only TVRO antennas).
Notwithstanding preemption, the village claims that Protter's antenna exceeds height and side yard limitations applicable to all structures, set forth in the Code of Ordinances. Since these requirements do not differentiate among antenna facilities they are not clearly preempted by 47 CFR 25.201. The preempted ordinance contains language suggesting these other limitations do not apply to antennas. § 6.12B.02. *618 Preemption effectively nullifies this language, a conclusion supported by the fact that both the height and location requirements in the preempted ordinance treat satellite television antennas different than other antenna facilities. Nonetheless, the permit requirement Elm Grove applied to satellite television antennas at the time Protter's antenna was installed, the only permit procedure available to Protter, is preempted. For the reasons given above, Elm Grove's claim based on Protter's failure to obtain a building permit must be dismissed on the merits.
This conclusion, dictated by the particular facts before the court, does not reach the merits of Elm Grove's other allegations, including claims that the tower structure is unsafe. In addition, this result raises a number of issues concerning whether other ordinance restrictions apply, or whether such restrictions are preempted or otherwise infringe on Protter's rights.
As a final note, this court has allowed Protter to amend his complaint to include claims under 42 U.S.C. § 1983 and § 1988. The new allegations recharacterize but do not substantially alter the nature of Protter's claims. However, any decision on these claims would be premature. Elm Grove has not yet responded to the additional claims, and the nature and complexity of those issues yet to be argued before this court remain uncertain.
Therefore,
IT IS ORDERED that the motion of the Satellite Broadcast and Communication Association to file an amicus curiae brief be and the same is hereby DENIED; and
IT IS FURTHER ORDERED that plaintiff Harold Protter's motion for partial summary judgment is GRANTED in part, and the Village of Elm Grove's Code of Ordinances, § 12B, differenting between satellite receive only antennas and other antenna facilities is preempted; and
IT IS FURTHER ORDERED that Elm Grove's claim against Harold Protter and Arthur Py for failure to obtain a permit to erect the antenna tower be and the same is hereby DISMISSED on the merits.