Keith **CAWLEY** and Karen
Cawley, Plaintiffs,

v.

**CITY OF PORT JERVIS, Defendant.**

**No. 90 Civ. 5194 (RLC).**

United States District Court,
S.D. New York.

Dec. 12, 1990.

W. James MacNaughton, Short Hills,
N.J., for plaintiffs.

Norman Shapiro, Goshen, N.Y., for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

In 1986, the Federal Communications Commission promulgated a regulation (the "FCC regulation")[1] designed to relieve users of satellite television receive-only dish antennas ("TVRO antennas") from burdensome local regulatory requirements. *See* Preemption of Local Zoning and Other Regulation of Receive Only Satellite Earth Stations, 51 Fed.Reg. 5519 (F.C.C. Feb. 7, 1986) (report and order) (hereinafter "FCC Report"). In this case, the court is called upon to decide whether Port Jervis City Zoning Ordinance § 158–69 (the "ordinance"),[2] which regulates the installation of TVRO antennas, is preempted by the FCC regulation.

As stated in the documents submitted by the plaintiffs, the facts of the case are as follows. Plaintiffs Keith and Karen Cawley are residents and homeowners in Port Jervis, New York. On July 9, 1990, plaintiffs applied to defendant City of Port Jervis for a building permit to install a TVRO antenna on the roof or in the front yard of their home, which at the time were the only locations on their property that would provide a clear line of sight from the antenna to the broadcast satellites. The following day, Wayne E. Kidney, a building official with the City of Port Jervis Building Department, sent a letter to plaintiffs denying them the building permit on the grounds that installation on the roof or in the front yard was forbidden by subsections E and F of the ordinance. Shortly thereafter, plaintiffs removed a tree from their property to allow the installation of a TVRO antenna in their back yard. At plaintiffs' request, Kidney staked out the area in their back yard that satisfied the minimum setback requirement. However, a survey by Electronic Control Connection, Inc., which was hired by the plaintiffs to install their antenna, revealed that the permitted locations were unacceptable, because a neighbor's tree would block access to six satellites.

Port Jervis provides a variance procedure whereby an exemption from the zoning requirements may be obtained from the City of Port Jervis Zoning Board of Appeal (the "ZBA"). Each applicant for a variance must pay an application fee of $100.00. In addition, the applicant must submit twelve copies of a survey map or site plan, as well as two copies each of a completed application form, a letter briefly explaining the

---

1. The FCC regulation provides, in pertinent part:

   State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations:

   (a) Have a reasonable and clearly defined health, safety or aesthetic objective; and

   (b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment.

   47 C.F.R. § 25.104 (1989).

2. The ordinance provides, in its entirety:

   Satellite dish antennas (earth receiving stations) are subject to the following supplementary requirements:

   A. Size Limitation. Satellite dish antennas may be permitted accessory to residential or nonresidential use as noted in the Use Table, provided that they have a maximum radius of four (4) feet.

   B. Building Permit. The installation of a satellite dish antenna shall require the issuance of a building permit.

   C. Screening. The satellite dish antenna must be screened from the street and adjoining property owners with foliage of such height and density so as to screen said antenna during the entire year.

   D. Location. The satellite dish antenna shall be located on the ground and shall not be located on any trailer or portable device.

   E. Setback. The satellite dish antenna shall be located in the side or rear yards of a lot only, and shall be an accessory structure requiring compliance with all minimum setback dimensions stated in the Bulk Table.

   F. Elevation. The satellite dish antenna shall not be connected to or placed upon any roof and shall not at any point be elevated to or reach a height of more than fifteen (15) feet above the natural grade of the subject lot. In no event shall the natural grade be changed by any means in order to increase the elevation of the antenna.

   Port Jervis City Zoning Ordinance § 158–69 (spacing altered).

project, a short-form environmental assessment form, and proof that the applicants own the property or have written permission from the owner. The procedure requires three meetings of the ZBA and takes a minimum of two months. Applicants must bear their own costs even if their applications are successful. The cost of applying for a building permit through the variance procedure would exceed the cost of plaintiffs' antenna, and would not guarantee that a permit would be obtained. For these reasons, plaintiffs did not avail themselves of the variance procedure.

On July 17, 1990, plaintiffs proceeded to install a TVRO antenna in their back yard, four feet from the adjacent lot, in violation of the minimum setback requirements and without obtaining a building permit. They did not place any foliage around the antenna. Two days later, Kidney issued a violation notice to the plaintiffs on the grounds that the satellite dish was installed without a building permit, was not properly screened by foliage, and was positioned too close to the edge of the lot, in violation of subsections B, C, and E of the ordinance.

The signals received by TVRO antennas are broadcast by seventeen television satellites located in geostationary orbit on the equator, spaced four degrees apart, at an altitude of about 22,300 miles over the eastern Pacific Ocean. If a TVRO antenna in Port Jervis is to receive signals from all seventeen satellites, it must have an unobstructed view from 69 degrees west to 143 degrees west at an elevation above the horizon from 10 degrees to 43 degrees.

The satellites carry approximately ninety television programming services. If the plaintiffs were to locate their antenna within the setback lines, they would lose access to four encrypted [3] and twenty unencrypted channels. Beginning in 1992, with the transfer of programs to a new satellite, they would lose access to another sixteen encrypted and four unencrypted channels.

The placement of foliage around the antenna would prevent the plaintiffs from receiving any satellite television signals. Moreover, the cost of the foliage would exceed the cost of the antenna.

Plaintiffs filed this action under 42 U.S.C. §§ 1983 and 1988, alleging that the ordinance was unconstitutional [4] and preempted by the FCC regulation, and seeking declaratory and injunctive relief and attorney's fees. Defendant moved to dismiss the action under Rule 12(b)(6), F.R. Civ.P., on the grounds that the complaint failed to allege that the FCC regulation was applicable. Plaintiffs filed a brief in opposition and a cross-motion for summary judgment, accompanied by affidavits and a statement of undisputed facts as required by Rule 3(g), Local Civil Rules, S. & E.D. N.Y.

■ There is no merit to defendant's contention that plaintiffs' complaint is inadequate. Pleadings are to be liberally construed. *See* Rule 8(f), F.R.Civ.P. The complaint states the underlying facts of the case, alleges that the ordinance prevents the installation of a fully functional antenna, alleges that the cost of the variance procedure could exceed the cost of the antenna, and cites the regulation claimed to be violated. These allegations afford the necessary "short and plain statement" of the plaintiffs' claim. Rule 8(a)(2), F.R. Civ.P. They clearly give the defendant the requisite "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *see also Dioguardi v. Durning*, 139 F.2d 774 (2d Cir.1944).

When a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropri-

---

**3.** To receive "encrypted" channels, the TVRO antenna owner must purchase a decoding device and pay license fees.

**4.** Plaintiffs' constitutional claims are based on the First Amendment and the Due Process Clause of the Fourteenth Amendment.

ate, shall be entered against [it]." Rule 56(e), F.R.Civ.P. The standard for summary judgment is the same as the standard for a directed verdict, namely, whether "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The local rules of this district impose the additional requirement that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted in the statement required to be served by the opposing party." Rule 3(g), Local Civil Rules, S. & E.D.N.Y.

■ Defendant's response to plaintiffs' motion consists of two letters of counsel, dated October 11 and November 13, 1990, stating that defendant has "not consented or conceded to all of the supposed undisputed facts" included in plaintiffs' Rule 3(g) statement and that defendant opposes the plaintiff's motion for the reasons stated in its motion to dismiss. The motion to dismiss merely states technical objections to the sufficiency of the complaint. Defendant has also filed an answer denying various allegations in the complaint. These submissions are not sufficient to meet the requirements of Rule 56(e) or Local Rule 3(g). Accordingly, plaintiffs are entitled to summary judgment if the evidence that they have presented establishes their claim.

■ Any person whose rights under FCC regulations have been denied by a local governmental body has a cause of action under 42 U.S.C. § 1983. *Van Meter v. Township of Maplewood,* 696 F.Supp. 1024, 1027 (D.N.J.1988); *Alsar Technolo-*

*gy, Inc. v. Zoning Bd. of Adjustment,* 235 N.J.Super. 471, 563 A.2d 83, 91 (Law Div. 1989); *see Golden State Transit Corp. v. City of Los Angeles,* ── U.S. ──, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989); *Playboy Enterprises, Inc. v. Public Serv. Comm'n,* 906 F.2d 25, 31–32 (1st Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990).[5] Exhaustion of state or local administrative remedies is not required for cases arising under § 1983. *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Moreover, the variance procedure here is itself challenged as being in violation of the federal requirements, *see Mathews v. Eldridge,* 424 U.S. 319, 330–31, 96 S.Ct. 893, 900–01, 47 L.Ed.2d 18 (1976), and the Zoning Board has no power to adjudicate the validity of the Port Jervis Zoning Ordinance. *See Lyle v. Avis,* 1 Misc.2d 880, 148 N.Y.S.2d 874, 879 (Sup.Ct.1956). Exhaustion would therefore be futile, and hence is not required. *See Mathews, supra,* 424 U.S. at 329–30, 96 S.Ct. at 900.

The ordinance "differentiates between satellite receive-only antennas and other types of antenna facilities," since it purports to apply only to "[s]atellite dish antennas (earth receiving stations)." It does not cover, for example, amateur radio antennas, satellite master antenna systems, or conventional radio and television receiving antennas. *See Van Meter, supra,* at 1029; FCC Report ¶ 33. Hence, it is preempted unless it satisfies both subsections of the FCC regulation.

■ On its face, the ordinance fails to meet the requirement of having a "clearly defined health, safety or aesthetic objective." The provisions of the ordinance suggest that it was enacted for aesthetic reasons, although it could conceivably have been intended to protect a local cable-tele-

---

**5.** When authorized by statute, a federal regulation may preempt state or local law. *City of New York v. FCC,* 486 U.S. 57, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988). The FCC regulation appears to be authorized by 47 U.S.C. §§ 151 and 605. *See* FCC Report, *supra,* ¶¶ 23–24. In any event, because petitioning the FCC for reconsid-

eration is a precondition for judicial review of an FCC decision, this court may not consider whether the FCC exceeded its authority. 47 U.S.C. § 405; *City of Peoria v. General Elec. Cablevision Corp.,* 690 F.2d 116, 121 (7th Cir. 1982); *Van Meter, supra,* 696 F.Supp. at 1029.

vision franchise holder from competition.[6] To be sure, some courts have held, without directly addressing the issue, that the requisite aesthetic objective can be inferred from the general nature of zoning regulations. *See Van Meter, supra*, 696 F.Supp. at 1029; *L.I.M.A. Partners v. Borough of Northvale*, 219 N.J.Super. 512, 530 A.2d 839, 844 (App.Div.1987) (holding by implication); *see also Easlick v. City of Lansing*, 875 F.2d 863 (6th Cir.1989) (unpublished opinion, text in Westlaw) (holding unclear); *City of Bloomfield Hills v. Gargaro*, 178 Mich.App. 163, 443 N.W.2d 495, 498 (1989) (per curiam) (holding unclear). However, the courts that have carefully considered the language and regulatory history of the FCC regulation on this point have concluded that the regulation requires the ordinance to define its objective explicitly. *See Village of Elm Grove v. Py*, 724 F.Supp. 612, 614 (E.D.Wis.1989); *Hunter v. City of Whittier*, 209 Cal.App.3d 588, 257 Cal.Rptr. 559, 565 (1989); *Alsar, supra*, 563 A.2d at 87–88.

The court agrees with the view that the health, safety or aesthetic objective must be expressly articulated in the ordinance itself or in accompanying regulations. Virtually every ordinance restricting TVRO antenna placement might be said to have an implied aesthetic objective. If such an implied and unclear purpose could satisfy the FCC regulation, the words "clearly defined" would be meaningless. As explained in the official comments accompanying the adoption of the FCC regulation, those words were carefully chosen by the FCC. FCC Report ¶ 34. The FCC intended to "requir[e] local authorities to justify a differentiation in treatment" between TVRO antennas and other types of antenna facilities, in order to "help ensure that local zoning power is not used to restrict unreasonably the installation of [TVRO] antennas." *Id.*

The FCC regulation imposes "a high burden" on defendant to justify any ordinance that differentiates between TVRO antennas and other antenna facilities. *Id.* ¶ 33.

If defendant is truly concerned with preserving an environment uncluttered with antennas, it is completely free to do so as long as it does not discriminate against TVRO antennas. *Id.* ¶ 32.

The variance procedure does not save the ordinance from preemption. The ZBA has virtually unfettered discretion to grant or deny a variance from the ordinance. The FCC regulation, with its requirement of a "clearly defined" objective, was designed to forbid that sort of standardless discretion. *Hunter*, 257 Cal.Rptr. at 565–66; *see* FCC Report ¶ 34; *see also Van Meter, supra*, 696 F.Supp. at 1031.

The lack of a clearly defined objective is by itself sufficient to invalidate the ordinance. Furthermore, on the facts of this case, certain parts of the ordinance impose unreasonable limitations on the plaintiffs' reception of satellite television signals, and thus fail to satisfy the second subsection of the FCC regulation as well.

█ Relocation of the antenna to a location permitted by the ordinance would eliminate the plaintiffs' reception of over half of the channels that they are now able to receive, including many of the channels that they wished to receive when they purchased the TVRO antenna. The planting of screening foliage would make the plaintiffs' reception of all satellite signals virtually impossible. An ordinance may not limit reception by requiring an antenna to "be screened so that the line of sight is obscured." FCC Report ¶ 36 (footnote omitted). Although the FCC regulation does not require defendant to permit optimal placement, the ordinance, as applied here, places an unreasonable burden on reception because "its provisions make reception technically impossible." *Van Meter, supra*, 696 F.Supp. at 1030.

█ The variance procedure also runs counter to the ban on unreasonable limitations on TVRO antenna installation. Entirely apart from the cost of the proceedings, the procedure occupies a minimum of two months, requires considerable effort

---

**6.** The Chicago ordinance that prompted the FCC to promulgate the regulation was such a protective measure. *See* Preemption of Local Zoning

Regulations of Receive–Only Satellite Earth Stations, 50 Fed.Reg. 13986 (F.C.C. Apr. 9, 1985) (notice of proposed rulemaking).

from the applicants, and is fraught with uncertainty. The ordinance is completely "insensitive to the unique conditions that govern reception on any given lot," *Van Meter, supra,* 696 F.Supp. at 1030, the variance procedure "is not governed by consistent, objective standards," *id.* at 1032, and the ZBA has no power to consider the invalidity of the ordinance in the light of the FCC regulation. *See Lyle, supra,* 148 N.Y.S.2d at 879. Thus, if the plaintiffs are clearly entitled to install their antenna under the FCC regulation, then requiring them to comply with the variance procedure would be a pointless and irrelevant exercise. *See Hunter, supra,* 257 Cal.Rptr. at 565 (valid ordinance must take federal rights into account). For these reasons, applying the current variance procedure to TVRO antenna installations is unreasonable as a matter of law.

Plaintiffs are entitled to summary judgment. The court does not reach the issue of whether the costs imposed by the ordinance are excessive.[7] The court also does not reach the plaintiffs' constitutional claims. Under 42 U.S.C. § 1988, plaintiffs in this case are entitled to attorney's fees as part of their costs of action.

█ In sum, the defendant's motion to dismiss is denied, and the plaintiffs' motion for summary judgment is granted. Port Jervis City Zoning Ordinance § 158–69 is declared to be preempted by federal law on its face, and defendant City of Port Jervis is permanently enjoined from enforcing that section against plaintiffs Keith Cawley and Karen Cawley. Plaintiffs' counsel is to submit an affidavit of costs and attorney's fees, accompanied by contemporaneous attorney time records and other appropriate documentation.

IT IS SO ORDERED.

---

7. Although it is not necessary to decide this issue, the court notes that costs in excess of the cost of installing the antenna are not, by that very fact, excessive as a matter of law. On the contrary, excessiveness is a factual matter to be evaluated in view of all the circumstances. *See* *Gargaro, supra,* 443 N.W.2d at 498–99 (remanding for the trial court to make factual findings on reasonableness, where the cost of purchasing and installing the antenna was $5,768.00 and the cost of screening foliage was $12,877.27).