Michael W. and Barbara S. KESSLER, Plaintiffs,

v.

TOWN of NISKAYUNA, Defendant.

Anthony SORIANO and Patricia Soriano, Plaintiffs,

v.

TOWN OF NISKAYUNA, Defendant.

Nos. 91–CV–104, 91–CV–464.

United States District Court, N.D. New York.

Oct. 10, 1991.

W. James MacNaughton, Woodbridge, N.J., for plaintiffs.

Dreyer Boyajian & Tuttle (James B. Tuttle, of counsel), Albany, N.Y., for defendant.

MEMORANDUM–DECISION
AND ORDER

McCURN, Chief Judge.

## I. OVERVIEW

This consolidated motion arises from litigation over two families' (plaintiffs) plans to install and/or maintain satellite television receive-only dish antennas ("TVROs") on the rooftops of their respective homes in Niskayuna, New York (defendant). The defendant has prevented one family from installing the satellite dish and is threatening legal action against the other if it does not remove the dish from its roof. The plaintiffs have brought this action to resolve the issue of whether federal law or the United States Constitution protects their interests in having TVROs on their respective rooftops. Asserting that there are no genuine issues of material fact, the plaintiffs now move for summary judgment.

## II. STATEMENT OF FACTS

### A. Background

"Satellite television receive only antennas," also known as "TVROs" and "earth stations," are devices that enable their users to receive television signals transmitted directly by satellite for view on their television sets. *Van Meter v. Township of Maplewood*, 696 F.Supp. 1024, 1024 (D.N.J.1988). A "parabolic antenna," more commonly known as a "satellite dish" because of its dish shape, is a type of TVRO. *Id.* TVROs deliver a range of television programming that surpasses that available over other media, including cable television. *See* Preemption of Local Zoning and Other Regulation of Receive Only Satellite Earth Stations, 51 Fed.Reg. 5519–01, at ¶ 25 (codified at 47 C.F.R. § 25.104 (1990)) ("FCC report"). Fully operating TVROs in Niskayuna, New York can receive over ninety television and radio programming services being transmitted from nineteen different satellites orbiting the earth. *See* Affidavit of Chuck Hall (5/12/91), at ¶¶ 6, 7 ("Hall Affidavit").

TVROs can reach their full capabilities, however, only if they have unobstructed views of the satellites. "[D]ense obstruction in the line of sight between a TVRO and a Television Satellite will preclude reception of a television signal by a TVRO. Such obstructions include, but are not limited to, shrubs, trees, and houses." *Id.* at ¶ 10; *accord Cawley v. City of Port Jervis*, 753 F.Supp. 128, 130 (S.D.N.Y.1990); *Van Meter*, 696 F.Supp. at 1030.

### B. The Present Controversy

Plaintiffs Michael and Barbara Kessler built a new home in Niskayuna, New York ("Town") in 1990. Shortly after moving to Niskayuna, the Kesslers made formal application to the appropriate Town authority for permission to install a satellite dish on their rooftop. The Kesslers had a satellite dish at their former home, and wanted to continue use of a dish to receive programs for professional and business purposes. Affidavit of Michael Kessler (5/22/91), at ¶ 5. The Town rejected their application on grounds that the dish placed on the rooftop would violate the Town zoning ordinance. The Kesslers thereafter applied to the Niskayuna Zoning Board for a variance of the ordinance but were met with strong opposition from their neighbors. The Board denied the variance application. The Kesslers subsequently brought this action against the Town, seeking a declaration that the Niskayuna zoning ordinance at issue is preempted by federal law and unconstitutional, and an order enjoining enforcement of the ordinance against them.

Plaintiffs Anthony and Patricia Soriano have lived in Niskayuna for several years. In 1989 the Sorianos installed, without the required permit, a satellite dish on the roof of their Niskayuna home. The Sorianos

used the dish for two years without indication from the Town that the presence of the dish was improper. In early 1991, however, the Town notified the Sorianos that their dish was illegal and that they must remove it unless they applied for and received a variance from the Zoning Board. To date the Sorianos have not applied for a variance, due in part to their belief that the zoning restriction on their satellite dish is invalid. Instead, the Sorianos brought this suit seeking, like the Kesslers, a declaration that the Niskayuna zoning ordinance at issue is preempted by federal law and unconstitutional, and an Order enjoining enforcement of the ordinance against them.

Upon stipulation of all parties, the Kesslers' and Sorianos' actions have been consolidated. The plaintiffs together now move for summary judgment.

## III. DISCUSSION

The Town relies exclusively on the Niskayuna Building Code to block plaintiffs' efforts to legally install TVROs on their rooftops. The plaintiffs challenge the ordinance on four alternative grounds:

(1) The ordinance is preempted by federal regulation;

(2) The ordinance violates their first amendment right to receive information;

(3) The ordinance violates the equal protection clause of the fourteenth amendment; and

(4) The ordinance is unconstitutionally vague.

Since this Court finds that the ordinance upon which Niskayuna relies is preempted by an FCC regulation, it need not rule on the plaintiffs' remaining arguments for summary judgment.

### A. The Niskayuna Ordinance

The Town of Niskayuna relies exclusively on portions of the Niskayuna Building Code ("Code" or "ordinance") to restrict the installation or maintenance of satellite dishes on the Sorianos' and Kesslers' rooftops. The Code prohibits "accessory structures" that exceed fifteen feet in height.[1] Niskayuna Building Code § 5.7.1.3. Satellite Receiving Dishes, such as those at issue in this case, are expressly defined by the Code as "accessory structures." *Id.* art. II ("Definitions": Satellite Receiving Dish). Since the satellite receiving dishes placed on the Kesslers' and Sorianos' rooftops are accessory structures that would exceed fifteen feet in height, they are prohibited by the Niskayuna Code.[2]

There are two critical and indisputable aspects of the Niskayuna ordinance that affect the outcome of this case. First, the ordinance distinguishes between TVROs and other types of antenna facilities. Of all types of antennas, only satellite dishes are explicitly considered "accessory structures" subject to the fifteen feet limitation. *See generally* Niskayuna Building Code art. II (making no mention of antennas other than satellite dishes). To be sure, this Court suggested to the Town's attorney at oral argument that the ordinance might not differentiate between TVROs and other types of antenna facilities. Twice the Town's attorney affirmatively pronounced to the Court that the ordinance does so discriminate.

---

**1.** Neither the Code nor the parties state whether "fifteen feet in height" refers to (1) height of the accessory itself, or (2) height from the ground. *See* Niskayuna Building Code § 5.7.1.3. Since the Town concedes that the satellite dish would be legal if placed in the respective plaintiffs' back yards, this Court presumes that "fifteen feet in height" refers to the distance from the ground to the top of the accessory.

**2.** The relevant portions of the Niskayuna Building Code provide as follows:

SATELLITE RECEIVING DISH—A device commonly parabolic in shape, mounted at a fixed point on the ground for the purpose of capturing television signals transmitted via satellite communications facilities and serving the same or similar function as the common television antenna. *For purposes of this ordinance, a satellite receiving dish shall be classified as a major accessory structure.*

. . . .

*5.7.1.2.* Accessory structures are not permitted in the front yard of any lot.

*5.7.1.3.* Unless otherwise specified, accessory structures shall not exceed fifteen (15) feet in height.

(emphasis added).

Second, the building code has a statement of purpose. *See* Niskayuna Building Code § 1.2. That statement of purpose does not state why the Town chooses to differentiate between satellite dishes and other types of antenna facilities. *Id.*[3]

## B. The Federal Regulation

The Kesslers and Sorianos argue that the ordinance is preempted by a regulation promulgated in 1986 by the Federal Communications Commission ("F.C.C."). The regulation cited by the Kesslers is entitled, "Preemption of local zoning of earth stations," 47 C.F.R. § 25.104 (1990) ("FCC Order" or "Regulation").[4] That regulation states, in pertinent part:

State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations:

(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and

(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment.

Neither party contests the validity of the FCC Order. Indeed, the Order has been held to be a valid exercise of federal agency power to preempt state and local ordinances. *Van Meter*, 696 F.Supp. at 1029 (citing *New York v. FCC*, 486 U.S. 57, 108 S.Ct. 1637, 1641–44, 100 L.Ed.2d 48). The

parties accept that the FCC Order is applicable to this case: the controversy concerns whether the Niskayuna ordinance as applied to the plaintiffs' satellite dishes is subject to the Order's strict rules of preemption.

■ In considering whether the FCC Order preempts the Town of Niskayuna ordinance, this Court must make a threshold determination of whether the ordinance differentiates between TVROs, such as those at issue in the present case, and other types of antenna facilities. *See* 47 C.F.R. § 25.104. This is because local ordinances which regulate *all* television antennas are not preempted by the FCC Order. The Niskayuna ordinance can be preempted only if it differentiates between TVROs and other antenna facilities. *Id.; cf. Easlick*, 875 F.2d 863 (ordinance did not differentiate between types of antennas, therefore was not preempted by the FCC Order). Significantly, the Town need not *intend* to discriminate between TVROs and other antennas; according to the express language of the regulation, preemption is possible if the ordinance merely *operates to* discriminate against TVRO use. 47 C.F.R. § 25.-104.

The ordinance explicitly designates satellite dishes, but not other antenna facilities, as "accessory structures" subject to the fifteen feet restriction. To be sure, nothing in the Niskayuna Building Code explicitly prevents the Kesslers and Sorianos, or any other resident, from constructing a common television antenna, *i.e.* an antenna that does not receive transmissions from

---

**3.** Niskayuna Building Code § 1.2 states:

Section 1.2 *Purposes*

It is the purpose of this Ordinance to preserve the land, to promote the health, safety, morals, and general welfare of the community, and to lessen congestion in the streets, to secure safety from fire, flood, panic and other dangers, to provide adequate light and air, to prevent the overcrowding of land, to promote land conservation, to avoid undue concentration of population, to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements.

**4.** Case law interpreting this regulation is scant; to date only four federal courts have issued

ascertainable written decisions construing the preemptive effect of § 25.104 on local ordinances. *See Easlick v. City of Lansing*, 875 F.2d 863 (6th Cir.1989) (printed in table form only: full text of this unpublished decision is available on WESTLAW); *Cawley v. City of Port Jarvis*, 753 F.Supp. 128 (S.D.N.Y.1990); *Village of Elm Grove v. Py*, 724 F.Supp. 612, 614 (E.D.Wis. 1989); *Van Meter v. Township of Maplewood*, 696 F.Supp. 1024 (D.N.J.1988).

Section 25.104 also came before this Court last year, in *Carino v. Town of Deerfield*, 750 F.Supp. 1156 (N.D.N.Y.1990) (McCurn, C.J.). That case, however, was resolved on other grounds and therefore did not address the effect of section 25.104.

satellites, on their rooftops. *See generally* Niskayuna Building Code art II (definitions). During oral argument, the Town's attorney actually rejected this Court's suggestion that the ordinance might not differentiate between TVROs and other antennas. *See also* Defendant's Memorandum of Law in Opposition, at 3–4 (arguments assume differentiation). Since by all indications the Town ordinance expressly singles out and operates to treat differently TVROs from other types of antennas, the threshold requirement is satisfied: The ordinance is subject to analysis under the FCC Order.

■ Next this Court must consider whether the ordinance satisfies the FCC Order's two-pronged test for avoiding preemption. The Niskayuna ordinance is preempted unless the Town can establish that the ordinance (1) has a reasonable and clearly defined health, safety or aesthetic objective, *and* (2) does not prevent or place unreasonable limitations on the TVROs' reception of satellite signals, or impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment. 47 C.F.R. § 25.104. This two-pronged test is clearly conjunctive: the ordinance is preempted unless it satisfies *both* prongs of the preemption test.

For the reasons discussed below, this Court finds as a matter of law that the ordinance fails the first prong because it does not have a clearly defined health, safety, or aesthetic objective. Since the ordinance fails to satisfy one of the FCC Order's requirements, it is preempted by the FCC Regulation.

## C. Reasonable and Clearly Defined Objective Requirement

The "clearly defined objective" requirement, when examined by itself, does not lend much guidance into discerning what constitutes a sufficiently defined statement. To be sure, the few courts having interpreted the requirement have disagreed on its scope and extent. *Compare Cawley*, 753 F.Supp. at 132 (requiring ordinance to carry a specific justification if it distin-

guishes between TVROs and other antennas) *and Village of Elm Grove v. Py*, 724 F.Supp. 612, 614 (E.D.Wis.1989) *with Van Meter*, 696 F.Supp. at 1029–30 (no such requirement: proper objective will be inferred). When the Order is considered in light of its history and purpose, however, it becomes abundantly clear that the view expounded in *Cawley* and *Elm Grove* is more enlightened: the FCC's "clearly defined objective" rule requires the Town to state *why* its ordinance differentiates between TVROs and other antenna facilities.

The FCC Order is based in large part on the federal government's continuing goal to increase the avenues of information services available to Americans. In furtherance of the policy, the FCC Order was implemented to restrict localities' efforts to stunt the growth of TVRO use in the United States. FCC Report ¶ 23. The FCC stated its purpose most directly when it announced:

> [W]e will not permit a state to arbitrarily favor one particular communications service over another and … local ordinances which engage in arbitrary discrimination will be preempted. The existence of alternative communications media is not a sufficient justification for discriminatory local regulations. In many cases, satellites deliver a wider range of programming than that available over other media such as cable television systems or MDS. Thus local regulation may deprive local residents of access to the broader range of choices available to antenna users in other parts of the country. In addition, this Commission repeatedly has emphasized it policies to maximize consumer choices by developing a competitive marketplace for the provision of telecommunications goods and services.

*Id.* ¶ 25 (footnotes omitted).

■ To that end, the FCC Order provides that a local ordinance that "unreasonably" discriminates against TVRO access is preempted by the Order. *Id.* ¶¶ 23–24. One assurance that local ordinances are reasonable is accomplished through the requirement at issue, *see* 47 C.F.R. § 25.104,

that local authorities justify a differentiation in treatment between TVRO antennas and other types of antenna facilities. *Cawley*, 753 F.Supp. at 132; *Elm Grove*, 724 F.Supp. at 612 (citing FCC Report ¶ 34). To avoid preemption by the FCC Order, an ordinance must clearly state a permissible objective behind drawing a distinction between TVROs and other types of antennas. *Cawley*, 753 F.Supp. at 132; *Elm Grove*, 724 F.Supp. at 612 (construing 27 C.F.R. § 25.104). A valid ordinance, in other words, must explicitly state *why* it differentiates between TVROs and other antenna facilities. Hence is the requirement that local ordinances that differentiate between TVROs and other types of antenna facilities "are preempted unless such regulations ... [h]ave a reasonable and clearly defined health, safety or aesthetic purpose."

This Court is not alone in interpreting the FCC Order as requiring localities such as Niskayuna to have a clearly defined permissible objective behind distinguishing between TVROs and other antennas. The Southern District of New York observed that, in enacting the clearly defined objective requirement, "[t]he FCC intended 'to require local authorities to justify a differentiation in treatment' between TVRO antennas and other types of antenna facilities." *Cawley*, 753 F.Supp. at 132 (quoting FCC Report ¶ 34). The court in *Elm Grove* held that the FCC Order, while not perfectly explicit, "clearly affirms that demanding 'a reasonable and clearly defined health, safety or aesthetic objective' is a means of 'requiring local authorities to justify a differentiation in treatment [in order to] help insure that local zoning power is not used to restrict unreasonably the installation of satellite receive-only antennas.'" 724 F.Supp. at 614 (citation omitted).

Counsel for the Town urges the Court to instead follow the contrary ruling set forth in *Van Meter*, 696 F.Supp. at 1029. There the District of New Jersey opined, in an statement devoid of any authority whatsoever, that the required "clearly defined" objective could be simply inferred from the ordinance, and that the state objective need

not declare why the ordinance differentiates between TVRO and other antenna restrictions. *Id.* The *Van Meter* ruling on this point has been adopted by no other court having addressed the issue. This Court rejects *Van Meter* and instead agrees with the Southern District of New York's assessment, that "the courts that have carefully considered the language and regulatory history of the FCC regulation on this point have concluded that the regulation requires the ordinance to define its objective explicitly.... If such an implied and unclear purpose could satisfy the FCC regulation, the words 'clearly defined' would be meaningless." *Cawley*, 753 F.Supp. at 132 (citing three other cases that have rejected the *Van Meter* standard).

■ Certainly the FCC Order could have been more clearly drafted. *Accord Elm Grove*, 724 F.Supp. at 614. Given the requirement's purpose of preventing discrimination against TVROs, however, a local ordinance will not avoid preemption if it is supported only by a general statement of aesthetic purpose that does not justify its disparate treatment of TVROs from other antenna facilities.

■ Turning to the present case, Niskayuna's ordinance is preempted by the FCC Order to the extent that it restricts use of TVROs, because it does not state a clearly defined permissible objective for its disparate treatment of satellite dishes. In its only statement of objective, the ordinance provides generally that its purpose is, *inter alia*, "to promote the health, safety, morals, and general welfare of the community." *See* Niskayuna Building Code § 1.2 (*Purposes*), quoted in full *supra* n. 3. The ordinance is undeniably devoid of any justification for the distinction between satellite dishes and other antenna facilities. Hence, under the FCC Order, the Niskayuna Building Code is preempted as it relates to satellite dish limitations.

The Town has articulated some understandable concerns relating to the aesthetic impact of satellite dishes amassing in its neighborhoods. This Court does not hesitate to proclaim its sympathy for the

Town's consternation. Nonetheless, the Court is bound by the Supremacy Clause to hold that the federal regulation preempts the Town ordinance. *See New York v. FCC*, 486 U.S. 57, 108 S.Ct. 1637, 1641–42, 100 L.Ed.2d 48 (1988), *cited in Van Meter*, 696 F.Supp. at 1029. The Town should recognize that while the FCC Order is strict in its language mandating preemption, it is by no means impossible to satisfy. At least one town has successfully articulated a clearly defined proper objective for differentiating between TVROs and other antennas. *Elm Grove*, 724 F.Supp. at 614. Alternatively, the Town should consider that the FCC Order applies only to localities that discriminate against TVRO use. "If [a town] is truly concerned with preserving an environment uncluttered with antennas, it is completely free to do so [without being preempted by the Order] so long as it does not discriminate against TVRO antennas." *Cawley*, 753 F.Supp. at 132 (citing FCC Report ¶ 32).

### D. Attorneys Fees

The Kesslers and Sorianos seek recovery of attorneys' fees incurred in pursuing this action, pursuant to 42 U.S.C. § 1988. That section allows recovery of attorneys fees when judgment is rendered pursuant to, *inter alia*, 42 U.S.C. § 1983. *Id.* The plaintiffs submit that their recovery is grounded in section 1983, thus entitling them to recovery. At oral argument, this Court expressed some concern over whether an action alleging federal regulatory preemption of a local ordinance is properly deemed to be a section 1983 action.

Section 1983 provides a private cause of action for any person who, under color of state law, has been deprived "of any rights, privileges, or immunities secured by the Constitution *and laws*" of the United

States. 42 U.S.C. § 1983 (emphasis added). Indeed, numerous Supreme Court cases have recognized that section 1983 is not limited to Constitutional or civil rights issues; an action may be properly brought under § 1983 alleging deprivation of a right secured by the laws of the United States. *Dennis v. Higgins*, —— U.S. ——, 111 S.Ct. 865, 868–70, 112 L.Ed.2d 969 (1991); *Wilder v. Virginia Hosp. Assoc.*, —— U.S. ——, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990); *Golden State Transit v. Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1990); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980).

In the present case, however, any "rights" the plaintiffs might have would arise under the FCC Order, which is a federal regulation. This Court has concern over whether an action alleging deprivation of rights secured by a federal regulation is cognizable under section 1983. This is because section 1983, by its very terms, limits remedies to deprivation of rights secured by the Constitution *and laws* of the United States. 42 U.S.C. § 1983. This Court is faced with the dilemma of whether "and laws" includes federal regulations such as the FCC Order.

The cases cited by the plaintiff at oral argument are of no assistance. Although the courts in *Cawley* and *Van Meter* made blanket statements that actions alleging violations of the FCC Order are cognizable under section 1983, neither court provided acceptable rationale supporting its conclusion.[5] *See Cawley*, 753 F.Supp. at 131; *Van Meter*, 696 F.Supp. at 1027. Furthermore, the Supreme Court cases discussing causes of action under section 1983 have been limited to examining rights secured by the Constitution or *laws*, and not by regulations. *Dennis*, —— U.S. ——, 111

---

**5.** The cases cited in *Cawley* to support its proposition that "any person whose rights under FCC regulations have been denied by a local governmental body has a cause of action under 42 U.S.C. § 1983," *see Cawley*, 753 F.Supp. at 131, are inapposite because (with the exception of *Van Meter*) they dealt only with deprivation rights secured by *laws* of the United States. None of the cases cited in *Cawley* answered the "real" question: whether a person has a remedy

under section 1983 for deprivation of rights secured merely by federal *regulations*. *See Golden State Transit*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (deprivation of rights secured by the NLRA) *and Playboy Enterpr. v. Public Serv. Comm'n*, 906 F.2d 25 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990) (deprivation of rights secured by the Cable Communications Policy Act), *cited in Cawley*, 753 F.Supp. at 131.

718

S.Ct. 865, 112 L.Ed.2d 969 (rights secured by the Commerce Clause); *Wilder*, —— U.S. ——, 110 S.Ct. 2510, 110 L.Ed.2d 455 (rights secured by Boren Amendment to the Medicaid Act); *Golden State Transit*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (deprivation of rights secured by the NLRA); *Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (rights secured by the Social Security Act). This court is able to discern no authority speaking to the issue of whether section 1983 provides a cause of action for alleged deprivation of rights secured by regulations of the United States.

Neither party to this action has briefed the Court on the question of attorneys fees in this case. This Court simply does not have enough information to render a decision on this leg of plaintiffs' motion. Therefore, this Court reserves decision on the question of whether plaintiffs can recover attorneys fees in light of today's ruling. If the plaintiffs wish to pursue their motion for attorneys' fees, they are directed to file a brief with this Court within twenty (20) days of the date of this decision. Defendant's brief in response should be filed in this Court within ten (10) days after plaintiffs' filing. Letter briefs will be sufficient. The Court will order oral argument on this issue only if necessary. The Court respectfully requests that the parties address the issues and concerns raised herein concerning whether this action, brought pursuant to a federal regulation, is cognizable under 42 U.S.C. § 1983.

### IV. CONCLUSION

Since the Niskayuna Building Code operates to differentiate between TVROs and other antenna facilities yet fails to state a legitimate objective for the distinction, the code's provisions regulating TVRO use are preempted. Plaintiffs' motion for summary judgment is therefore granted.

Decision on plaintiffs' motions for attorneys fees is reserved pending further briefing by the parties.

IT IS SO ORDERED.